793 A.2d 871 (2002)
349 N.J. Super. 480
S.D., Appellant,
v.
DIVISION OF MEDICAL ASSISTANCE AND HEALTH SERVICES and Monmouth County Board of Social Services, Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted February 14, 2002.
Decided April 3, 2002.
Miller and Gaudio, attorneys for appellant (Scott C. Arnette, Red Bank, of counsel and on the brief).
David Samson, Attorney General of New Jersey, attorney for respondent Division of Medical Assistance and Health Services (Michael J. Haas, Assistant Attorney General, of counsel; Douglas M. Alba, Deputy Attorney General, on the brief).
Before Judges KING, CUFF and WECKER.
The opinion of the court was delivered by KING, P.J.A.D.
Appellant challenges the decision of the agency, the Division of Medical Assistance and Health Services, setting her eligibility date for Medicaid benefits at July 1, 2000 instead of July 1, 1999. In reaching this decision on behalf of the agency, the Director of the Division "reversed" the decision of the Administrative Law Judge (ALJ) and rejected his factual findings and legal conclusions, including his eligibility date recommendation.
*872 The factual issue at the OAL hearing before the ALJ was whether the appellant received proper notice of the $2000 "pay down" requirement for Medicaid eligibility. In his "factual discussion" the ALJ explained the situation this way.
The essential facts in this matter are not in dispute[ ]. Marie Drutz, testifying on behalf of respondent county welfare agency (CWA), testified that on March 9, 1999, the petitioner's daughter F.R. applied for Medicaid-only eligibility on behalf of petitioner. The petitioner had been previously admitted to a nursing home on October 16, 1998. At the time of the application, the petitioner had resources of $13,211. Ms. Drutz was advised that petitioner's daughter, F.R., had been advised to spend down petitioner's resources to the $2,000 eligibility limit. Ms. Drutz explained that the petitioner's income continued to accumulate in her bank accounts and, as a result, she was not resource eligible until December 1999 resulting in her being eligible for Medicaid only as of January 1, 2000.
As part of the efforts by F.R. to spend down petitioner's resources, life insurance policies were cashed in and the proceeds were used for a prepaid burial in May 1999. Ms. Drutz explained that one of the problems was that on May 24, 1999, the petitioner's daughter used her own funds to pay a nursing home bill in the amount of $2,367. There was $3,553 in petitioner's bank accounts as of June 1999.
On cross-examination Ms. Drutz testified that she [F.R.] was not present on the date of the initial application made on behalf of petitioner. She understood that F.R. had problems in her family and her husband was sick, and there were some other difficulties.
Deneen Wyche testified that in April 1999, she sent a notice entitled "Important Notice" advising petitioner's daughter of the necessity to spend down the petitioner's resources to the $2,000 eligibility limitation. On cross-examination she admitted that she had been involved in more than 20 cases but that she recalled sending the "Important Notice" in this case. She also spoke to F.R. about the spend down on March 28, 1999, according to her notes. She recalled that F.R. was moving, had problems with her back and also had lost documentation necessary for this matter.
F.R., the daughter of the petitioner testified that petitioner was admitted to the nursing home in October 1998. She was advised to apply for Medicaid when petitioner's account balances fell under $10,000 and that is what she did. She testified that she was completely unaware of the resource eligibility limitation of $2,000 and that she was required to spend down her mother's resources to that amount. The first notice she received of the necessity to spend down resources was the "Important Notice" which she received in December 1999, or January 2000.
The ALJ then proceeded with his "Legal Discussion and Analysis" in this fashion:
It is undisputed that through the month of December 1999, petitioner had resources which exceeded the sum of $2,000. N.J.A.C. 10:71-4.1(e) requires that eligibility be determined as of the first day of the month and that if an applicant's resources exceed $2,000 the applicant is not eligible for Medicaid only.
Petitioner does not dispute the foregoing, but argues based on B.W. v. Division of Medical Assistance and Health Services, 95 N.J.A.R.2d (DMA) 2 that petitioner should be eligible at an earlier *873 date because of the failure of the respondent to notify the petitioner of the eligibility requirement. In the B.W. case, the petitioner's granddaughter was never counseled by a representative of the Medicaid office regarding Medicaid eligibility and the significance of having resources in excess of $2,000. Thus, the issue in that case was whether the county welfare agency has the obligation to affirmatively counsel a client regarding eligibility. In that matter the ALJ relied upon N.J.A.C. 10:71-2.2(c) and Meyer v. Dept. of Human Services, 269 N.J.Super. 310, 635 A.2d 544 (App.Div.1993), in holding that it is the county welfare agency's responsibility to notify ineligible persons of the reasons for the ineligibility. Because the CWA in that matter failed to counsel the applicant's granddaughter regarding eligibility limits triggering Medicaid benefits the ALJ held that the applicant was eligible as of a date when petitioner could have paid a nursing home bill which would have left the applicant eligible to receive[ ] Medicaid benefits.
In the present matter petitioner's daughter testified to her use of her own funds to pay a nursing home bill on June 24, 1999. Other payments from her mother's account in the amount of $8,943 in June 1999 left a balance of resources in her mother's account of approximately $2,122. Thus, if petitioner daughter paid a portion of her mother's available resources to the nursing home instead of using her own funds, petitioner would have been eligible for Medicaid only as of June 1, 1999.
The CWA representative testified that in April 1999, she sent a notice advising petitioner's daughter of the necessity to spend down the petitioner's resources to the $2,000 eligibility limitation, and she also spoke to F.R. about the spend down on May 28, 1999, according to her notes. Petitioner's daughter testified that she was completely unaware of the resource eligibility limitation of $2,000 and that the first notice she received of the necessity to spend down resources was in December 1999, or January 2000. I FIND that it is unlikely that petitioner's daughter would have used her own funds to pay a nursing home bill on June 24, 1999, if she had been notified of the necessity to spend down the petitioner's resources to the eligibility limitation of $2,000.

Based on this and based on the holding in B.W. case, I FIND that petitioner should be granted Medicaid only eligibility as of July 1, 1999.

[Emphasis supplied.]
In her December 21, 2000 final agency decision, the Director did not consider or discuss the pay-down notice issue and the conflict in the testimony inherent therein, which had been resolved in appellant's favor by the ALJ. The Director in a conclusory manner simply stated that she "has reviewed the record" and finds the "ALJ's recommendation granting eligibility is in error and should be reversed." There was no discussion or analysis, no mention of the credibility conflict, and no mention of notice of the $10,000 versus $2,000 pay-down limit issue.
The principles controlling our review of agency review of an ALJ's fact-finding are clearly described in Lefelt, Miragliotta and Prunty, Administrative Law & Practice, New Jersey Practice Series, § 7.20 at 390-91 (2000 2d ed. & Supp.) (Lefelt).
§ 7.20 The Standard for Judicially Reviewing Findings of Fact in an Agency Adjudication
... The matter is more complicated if the agency head reversed the ALJ's factual findings. A reviewing court need *874 give no deference to the agency head on the credibility issue where the agency head, based upon a review of the transcript and documentary evidence, rejects the judge's recommended findings of facts, since it was the administrative law judge, and not the agency head, who heard the live testimony, and who was in a position to judge the witnesses' credibility.12 [12Clowes v. Terminix Int'l, 109 N.J. 575, 538 A.2d 794 (1988).]
With regard to other findings, the law still requires a reviewing court to assess the agency head's findings and determine whether they are supported by sufficient credible evidence present in the record as a whole.13 [13Close v. Kordulak Bros., 44 N.J. 589, 210 A.2d 753 (1965).]
One of the best protections against an agency exercising discretionary power arbitrarily is found in the requirement that findings and reasons be set forth so that a reviewing court can assess the agency determination.14 [14In re Hawley, 98 N.J. 108, 484 A.2d 684 (1984).]
Under the review standard for agency fact finding, a difference of opinion between the Appellate Division and the agency head concerning the evidential persuasiveness of relevant proofs will not cause a reversal.15 [15 Dore v. Board of Educ. of Bedminster Tp., 185 N.J.Super. 447, 453, 449 A.2d 547, 550 (App.Div.1982).] It is not the function of the courts to substitute their independent judgment on the facts for that of an administrative agency. The court will usually not review the evidence, determine the credibility of witnesses, draw inferences and conclusions from the evidence or resolve conflicts therein.16 [16 In re Grossman, 127 N.J.Super. 13, 23, 316 A.2d 39, 43-44 (App.Div.), certif. denied, 65 N.J. 292, 321 A.2d 253 (1974).] Only when the Appellate Division's review of the record leaves it with the feeling that the agency head's decision is clearly a mistaken one and so plainly unwarranted that the interests of justice demand correction, then and only then, will the court make it own findings and conclusions.17 [17 Clowes v. Terminix International, Inc., 109 N.J. 575, 538 A.2d 794 (1988). See Chou v. Rutgers, State University, 283 N.J.Super. 524, 662 A.2d 986 (App.Div.1995), [certif. denied, 145 N.J. 374, 678 A.2d 714 (1996),] where the lack of substantial credible evidence in the record to support the agency's conclusion led the court to engage in its own lengthy review of the facts. See also Koza v. New Jersey Department of Labor, 307 N.J.Super. 439, 704 A.2d 1310 (App.Div.1998).]
In the supplement for 2001, Lefelt points out the recent amendment to the Administrative Procedure Act dealing with this subject, N.J.S.A. 52:14B-10(c),[1]L. 2001, c. 5, § 4, effective date July 16, 2001; L. 2001, c. 5, § 12. In our view, this amendment changes the traditional scope-of-review duty of the agency when reviewing *875 the ALJ's credibility findings. An agency head reviewing an ALJ's credibility findings relating to a lay witness may not reject or modify these findings unless the agency head explains why the ALJ's findings are arbitrary or not supported by the record.
Section 7.20 in Lefelt`s 2001 Supplement states:
In has long been established that a reviewing court need not defer to an agency head which reversed the credibility finding of an administrative law judge.18 [18Clowes v. Terminix International, 109 N.J. 575, 538 A.2d 794 (1988).] The recent amendments to the Administrative Procedure Act provide that an "agency head may not reject or modify any findings of fact as to issues of credibility of lay witness testimony unless it is first determined from a review of the record that the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record." 19 [19 N.J.S.A. 52:14B-10(c).] Thus, [an] appellate court will now need to ensure that the agency head applied the appropriate standard of review when modifying or reversing credibility findings of lay witnesses.
See also Lefelt, § 6.16 at Supp. 23 (2001 ed. Supp.), on the amendment effective on July 1, 2001. See also R. 1:7-4(a) ("Required Findings").
We remand to the agency for findings and conclusions consistent with the views expressed herein and the recent amendment to the Administrative Procedure Act, N.J.S.A. 52:14B-10(c), effective July 1, 2001. See Riggs v. Long Beach Tp., 101 N.J. 515, 521, 503 A.2d 284 (1986) ("time of decision" rule). We request the agency to forward directly to our respective chambers appropriate findings and conclusions by April 25, 2002, after which we will issue a final opinion promptly. If the matter is hereafter resolved at the agency level, we will dismiss the appeal when so notified by the parties.
Remanded with instructions.
NOTES
[1] The pertinent portion of the § 10(c) amendment effective in July 2001 states:

... In reviewing the decision of an administrative law judge, the agency head may reject or modify findings of fact, conclusions of law or interpretations of agency policy in the decision, but shall state clearly the reasons for doing so. The agency head may not reject or modify any findings of fact as to issues of credibility of lay witness testimony unless it is first determined from a review of the record that the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record. In rejecting or modifying any findings of fact, the agency head shall state with particularity the reasons for rejecting the findings and shall make new or modified findings supported by sufficient, competent, and credible evidence in the record.