**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5638-16T2

HEATHER LERCH,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

     Respondent-Respondent.

_____

Submitted January 8, 2019 – Decided September 30, 2019

Before Judges Hoffman and Suter.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Hagner & Zohlman, LLC, attorneys for appellant (Thomas A. Hagner, on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa H. Raksa, Assistant Attorney General, of counsel; Sadyhè Tanyse Bradley, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SUTER, J.A.D.

Heather Lerch appeals from the Board of Trustees of the Teachers' Pension and Annuity Fund (Board) denial of her application for ordinary disability retirement benefits. The Board rejected appellant's application after it adopted, without further comment, the findings and conclusions reached by an Administrative Law Judge (ALJ). We affirm the Board's decision.

I

Appellant was employed as an elementary school teacher, beginning as a kindergarten teacher in 2000 and then as a second grade teacher, until she retired in May 2013. Just before retiring, appellant applied for an ordinary disability pension, claiming she was disabled by reflex sympathetic dystrophy (RSD). Her application was denied in 2015, and she contested the decision. Her case was transmitted to the Office of Administrative Law for a hearing before an ALJ. The Initial Decision by the ALJ denied appellant's ordinary disability pension application. On July 7, 2017, the Board adopted the Initial Decision, and affirmed it. This appeal followed.

In the spring of 2008, after having taught for eight years, appellant testified she began to have vision problems, weakness on her right side, and was

dropping things. She went to see neurologist Dr. Robert Schwartzman, who ordered blood tests, a spinal tap, MRIs[1] of the brain and spine, an EMG[2] and nerve conduction studies. He diagnosed appellant with Guillain-Barre syndrome, treating her with "plasma exchange therapy" that was to remove inflammatory proteins from her blood. She reported having other symptoms that included pain, swelling and skin color changes and motor weakness. In June 2008, Dr. Schwartzman diagnosed appellant with RSD, now known as complex regional pain syndrome (CRPS). She received ketamine infusions at Dr. Schwartzman's direction to treat her CRPS symptoms.

Appellant testified that by this time there were certain things that were "very difficult to do" such as "[l]ifting, carrying around things, being able to assist the students as needed . . . ." Her husband helped her set up her classroom, moved and cleaned desks, brought in her supplies and got "everything set to make it easier for [her] to be able to teach." She took a leave of absence in the spring of 2008, but then returned to teaching.

---

[1] MRI stands for magnetic resonance imaging, and it is a kind of scan that can produce detailed pictures of parts of the body. Stedman's Medical Dictionary 1232, B13 (28th ed. 2008).

[2] EMG stands for electromyography and is a diagnostic procedure to assess the health of muscles and the nerve cells that control them. Id. at 622.

A-5638-16T2

In March 2011, appellant took another leave of absence because she was pregnant and it was "the consensus of both [her] neurologist, Dr. Schwartzman, and [her obstetrician] at that time, that [she] should stop working." She testified that her pain had increased. She was cutting and pasting her lesson plans from previous years, and had the children come up to her desk for her to check their work. She was absent at times to attend to her medical treatments. Her use of the computer was more limited. She only used the lower portion of the blackboard to write because elevating her arm hurt. Nonetheless, appellant received good evaluations. She did not return to work after this leave of absence although it had been her intent to do so.

Dr. Schwartzman retired and his protégé, Dr. Enrique Aradillas-Lopez, took over appellant's treatments beginning in July 2013. Appellant had a child in December 2015. She continued to receive ketamine injections.

Appellant testified that if she were teaching, she no longer would be able to go outside for bus duty or greet the children because of the effect on her of the cold. She would have difficulty writing on the blackboard, carrying around lesson plans, handing out materials, keeping them clean, physically getting down to the level of the children, using a computer and setting up the classroom.

A-5638-16T2

She would need to take breaks. She has not tried to work anywhere since leaving in 2011.

Appellant's husband testified he now worked from home because it gave him more flexibility to get things done at the house and for their one-year-old child. By 2009, he was helping appellant set up her classroom. In 2010, he testified that appellant would come home from school and be in bed by 6:00 p.m. He also testified about his increased responsibilities at home compared to earlier in their marriage. In 2011, appellant intended to return to work after her maternity leave, but according to her husband, "she definitely, physically had much more trouble following that point." Appellant's friend and a neighbor both testified about appellant's lack of energy, swollen hands and less frequent social outings. Another friend testified that sometimes she assisted appellant in the classroom by making copies, cleaning the classroom or lifting things.

Dr. Aradillas-Lopez, a board certified neurologist, testified for appellant. He took over appellant's treatment after Dr. Schwartzman retired, although he may have "seen her a couple of times prior" to that. He based his opinion on Dr. Schwartzman's initial consultation in 2008 and his review of Dr. Schwartzman's records. Dr. Aradillas-Lopez acknowledged there was "no test to diagnose" CRPS and that "[a]ny pain is subjective." Dr. Schwartzman had

5

diagnosed appellant with CRPS because she had pain "out of proportion," painful stimulations spread to other parts of her body, she had swelling, skin color changes, motor weakness and atrophy. Dr. Aradillas-Lopez acknowledged that all this information was based upon self-reported information from appellant.

Dr. Aradillas-Lopez agreed with Dr. Schwartzman's diagnosis. He opined that this "disables her from performing the regular and assigned duties of a schoolteacher." He testified "he would think" she was "not able to perform her duties as a schoolteacher." She could not carry anything heavier than five pounds or it would be a "severe burden." He testified that whether her ability to use a computer was affected would "all depend[]." The stamina of any CRPS patient is altered. Sleeping a lot was consistent with this diagnosis. He acknowledged she also was diagnosed with hypothyroidism and rheumatory arthritis.

Dr. Steven Lomazow, a board certified neurologist, testified for the Board. In his examination of appellant on August 26, 2013, he did not observe "any objective evidence of any neurological disease on the basis of any objective tests." His examination findings of appellant were "normal." Contrary to Dr. Aradillas-Lopez's report, Dr. Lomazow's examination did not show "changes in

6

skin condition, in color" or "glove-stocking sensory" findings. He did not agree with the diagnosis of Guillain-Barre because the test results from 2008 contraindicated that diagnosis. The doctor did not agree with the diagnosis of CRPS on the basis of his examination. Her hands were not gnarled-up or cold. There were no skin color changes. He testified "[h]er examination was completely benign and you just don't see that in chronic patients of this nature." Dr. Lomazow found no "objective evidence of any neurological disease on the basis of any objective tests," although he admitted the diagnosis of CRPS did not require "diagnostic test findings." He was critical of another peer-reviewed report that supported the CRPS diagnosis because the doctor who prepared that report made the diagnosis without taking a medical history.

The ALJ concluded that Dr. Lomazow's opinion was more persuasive than Dr. Aradillas-Lopez's about appellant's "ability to perform the functions of her job as a teacher." Dr. Aradillas-Lopez had not undertaken a new evaluation of appellant. He made his diagnosis based upon Dr. Schwartzman's records. In contrast, Dr. Lomazow's made "detailed observations." He elaborated on appellant's "lack of physical symptoms that should have accompanied her complaints." The ALJ found the medical evidence presented by appellant to be

"less credible than the evidence presented by the Board." He reasoned that appellant's complaints of pain were subjective.

The physical limitations that appellant and Dr. Aradillas-Lopez testified about did not indicate appellant was "totally disabled from teaching elementary school." She was diagnosed with CRPS in 2008 and continued teaching until 2011, with the intent to return. Her evaluations remained good. She prepared lesson plans by cutting and pasting, assisted the children from her desk, could use the lower portion of the blackboard and respond to emails. The ALJ found she "demonstrated ability for restricted work, and she demonstrated ability for her essential job duties as a grade-school teacher." He found that "[appellant's] condition was not enough to cause her to be totally disabled and unable to perform her work duties. Her duties were of such a nature that she could continue working as well as undertake and perform a majority of the functions required of her." The Board adopted the Initial Decision.

On appeal, appellant argues the Board's decision was arbitrary, capricious and unreasonable because it was premised on contradictory findings of fact and conclusions of law. Appellant complains the Board should have given greater weight to the testimony of her treating physician. She argues the Board's decision was based on misstatements and mischaracterizations of material facts.

She also claims the Board's decision was contrary to public policy to ensure student health and safety.

## II

The scope of our review of a final agency decision is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). We will uphold an agency's decision "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). However, we are not "bound by an agency's interpretation of a statute or its determination of a strictly legal issue." Ibid. (quoting Mayflower Sec. Co. v. Bureau of Sec., 64 N.J. 85, 93 (1973)).

We accord deference to the credibility determinations of the ALJ, who had the opportunity to hear the testimony of the witnesses and consider the exhibits. Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988). We may not "engage in an independent assessment of the evidence as if [we] were the court of first instance." In re Taylor, 158 N.J. 644, 656 (1999) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

Under the Teachers' Pension and Annuity Fund Law, N.J.S.A. 18A:66-1 to -93, an education professional, upon becoming permanently incapacitated,

can receive either ordinary disability or accidental disability retirement benefits. Kaspar v. Bd. of Trs. of Teachers' Pension & Annuity Fund, 164 N.J. 564, 573 (2000). To qualify for ordinary disability retirement benefits under N.J.S.A. 18A:66-39(b), a teacher must demonstrate he or she is "physically or mentally incapacitated for the performance of duty and should be retired." Appellant has the burden of proof. Bueno v. Bd. of Trs., Teachers' Pension & Annuity Fund, 404 N.J. Super. 119, 126 (App. Div. 2008).

An applicant must establish an incapacity to perform duties in the general area of her regular employment, rather than merely showing an inability to perform his or her specific job. See Bueno, 404 N.J. Super. at 130-31. An appellant does not need to prove she is "generally unemployable" or "disabled from performing the specific function[s] for which [she] was hired." Getty v. Prison Officers' Pension Fund, 85 N.J. Super. 383, 390 (App. Div. 1964). "[T]he criterion is whether or not [the appellant] is employable in the general area of [their] ordinary employment." Skulski v. Nolan, 68 N.J. 179, 205 (1975) (quoting Getty, 85 N.J. Super. at 390).

Applying Skulski and Bueno with our limited scope of review, there was nothing arbitrary, capricious or unreasonable in the Board's decision. The ALJ weighed the expert testimony and concluded that Dr. Lomazow's opinion

regarding appellant's health and ability to work as a teacher was more persuasive than that presented by Dr. Aradillas-Lopez. Appellant bore the burden of proving by a preponderance of the credible evidence that she is "physically or mentally incapacitated for the performance of duty and should be retired." N.J.S.A. 18A:66-39(b). However, as noted by the ALJ, the evidence demonstrated appellant's duties were such that she could continue working and perform many of the functions of a teacher. He found Dr. Lomazow's testimony was more credible. The Board's determination was amply supported by credible evidence and was neither arbitrary, capricious, nor unreasonable.

Appellant claims the Board relied on contradictory facts and conclusions of law because the ALJ referred three times to appellant's "condition." This argument is without merit. Read in context, this was simply the ALJ's shorthand way of referring to appellant's constellation of alleged health complaints and was not an endorsement of Dr. Schwartzman's diagnoses.

Appellant claims the Board should not have given more weight to Dr. Lomazow's opinion because Dr. Aradillas-Lopez was her treating physician. Generally, "where the medical testimony is in conflict, greater weight should be accorded to the testimony of the treating physician." Bialko v. H. Baker Milk Co., 38 N.J. Super. 169, 171 (App. Div. 1955). However, the opinion of a

treating physician and the opinion of other testifying experts may be given equal weight if the treating physician did not "acquire[] any knowledge in the course of treatment that enabled him to give a more reliable opinion on causation than was given by" the other expert witness. Markant v. Hommer Tool & Mfg. Co., 28 N.J. Super. 566, 571 (App. Div. 1953).

Dr. Aradillas-Lopez did not conduct an independent examination of appellant to reach his conclusions. Dr. Schwartzman was the doctor who actually diagnosed appellant. Although Dr. Aradillas-Lopez may have seen her before Dr. Schwartzman retired, his testimony and diagnosis were based on Dr. Schwartzman's records and the tests from 2008. Thus, Dr. Aradillas-Lopez's opinion did not merit greater weight.

It was the duty of the fact-finder, in this case the ALJ, to assess the credibility of the testifying experts and the weight accorded to each witness. Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 85-86 (App. Div. 1961). The ALJ found Dr. Lomazow more credible; he explained why. The ALJ's credibility findings regarding these witnesses should be entitled to deference because the ALJ heard the actual testimony and was in the best position to assess their credibility. See S.D. v. Div. of Med. Assistance, 349 N.J. Super. 480, 485 (App. Div. 2002).

A-5638-16T2

Appellant contends the Board's decision was arbitrary, capricious and unreasonable because it was based on five factual misstatements or mischaracterizations of material facts by the ALJ. After carefully reviewing the record, we do not find merit in this argument.

Whether or not Dr. Aradillas-Lopez testified that appellant was "not able to perform her duties as a school teacher," appellant testified about how she was able to prepare lesson plans, use a computer, write on the blackboard and assist students even though she testified that she modified the way in which she performed these tasks. Dr. Aradillas-Lopez may have seen appellant at some point before Dr. Schwartzman retired, but his testimony was that he relied on Dr. Schwartzman's records and tests. Whether Dr. Aradillas-Lopez agreed with Dr. Schwartzman's diagnosis of CRPS, the ALJ found Dr. Lomazow to be credible and his analysis to be more persuasive. The ALJ's decision reflected his consideration of all the testimony including appellant's. Finally, the record did not include evidence that Drs. Schwartzman and Aradillas-Lopez discussed appellant's diagnosis or that Dr. Aradillas-Lopez conducted his own examination of appellant.

Appellant complains for the first time on appeal that the Board's decision violated public policy. This was not raised before the Board and because of this,

we need not consider it.  Selective Ins. Co. of Am. v. Rothman, 208 N.J. 580, 586 (2012); Nieder v. Royal Indem. Ins. Co., 162 N.J. 229, 234 (1973).

Appellant's remaining arguments are without sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5638-16T2