**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2881-17T1

R.K.,

     Petitioner-Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES, and CAPE MAY
COUNTY BOARD OF SOCIAL
SERVICES,

     Defendants-Respondents.

_____

Submitted October 8, 2019 – Decided December 5, 2019

Before Judges Gilson and Rose.

On appeal from the New Jersey Department of Human Services, Division of Medical Assistance and Health Services.

SB2, Inc., attorneys for appellant (Laurie M. Higgins, of counsel and on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health

Services (Melissa H. Raksa, Assistant Attorney General, of counsel; Mark D. McNally, Deputy Attorney General, on the brief).

Respondent Cape May County Board of Social Services has not filed a brief.

PER CURIAM

Petitioner R.K. appeals from a final agency decision by the Division of Medical Assistance and Health Services (the Division) that imposed a 199-day period of ineligibility for Medicaid benefits. That ineligibility was based on R.K. having transferred her ownership interest in a home to her daughter and son-in-law within sixty months of entering a nursing home facility. R.K. argues that the Division acted arbitrarily and capriciously in rejecting a determination by an administrative law judge (ALJ) that R.K. qualified for the caregiver exemption. The Division found that R.K. submitted insufficient evidence to support the exemption. Given our deferential standard of review, we discern no basis to reject the Division's determination and, therefore, we affirm.

I.

R.K. was admitted to the Autumn Lake Healthcare Nursing Home at Ocean View on April 22, 2015. Four months later, in August 2015, a Medicaid application was submitted on her behalf to the Cape May County Board of Social Services, the county welfare agency (CWA) responsible for reviewing such

applications. The CWA approved R.K. for Medicaid benefits as of May 1, 2015 but imposed an asset transfer penalty. The penalty was based on R.K. having transferred her one-third interest in her home in 2011 to her daughter and son-in-law.

R.K. requested a fair hearing to dispute the transfer penalty. The matter was transmitted to the Office of Administrative Law (OAL) and a hearing was held before an ALJ in 2016. In May 2016, the ALJ issued an initial decision reversing the transfer penalty. The ALJ found that R.K.'s 2011 transfer of her interest in her home met the caregiver exemption. In making that determination, the ALJ accepted the evidence submitted by R.K. that her daughter had provided care to her for two years before R.K. went into the nursing home that allowed R.K. to remain at home rather than be institutionalized.

On administrative appeal, the Division rejected the ALJ's decision because the record did not support the ALJ's findings. The Division found that R.K. had not provided competent medical evidence about her physical condition for the two years before she entered the nursing home. Specifically, the Division rejected an affidavit from Dr. Jenny Lynn Cook because that affidavit did not state that Dr. Cook had treated R.K. Consequently, the Division remanded the matter to the OAL for further development of the record. The Division also

directed the ALJ to clarify who paid for the adult daycare and hospice services R.K. received before going to the nursing home.

In 2017, a second hearing was held before the same ALJ. After considering additional evidence, on October 16, 2017, the ALJ again found that R.K. was entitled to the caregiver exemption and reversed the transfer penalty. The ALJ relied on records that showed that R.K. had received hospice care since November 7, 2013. Those records showed that in November 2013, R.K. was diagnosed with congestive heart failure, atrial fibrillation, cerebral vascular accident (stroke), dementia, and depression. The ALJ also found that R.K. had received medical care provided by an adult day care facility from June 2014 until December 2014, and hospice services from November 2013 that continued through R.K.'s institutionalization. Those services had been paid for by R.K.'s private insurance and Medicare. The ALJ held that such insurance and Medicare did not constitute governmental benefits such as Medicaid and, thus, did not disqualify R.K. from the caregiver exemption.

On a second administrative appeal, the Division again rejected the ALJ's determination in a final agency decision issued on January 16, 2018. The Division found that R.K. had not provided medical documentation showing her medical condition for the full two-year period required by the caregiver

exemption. Specifically, the Division found that R.K. "provided no medical evidence whatsoever about her condition from March 2013 through November 2013." In making that finding, the Division pointed out that the records concerning R.K.'s hospice services began in November 2013. The Division also stated that it had previously rejected the affidavit of Dr. Cook and R.K. had not provided any other medical documentation concerning her condition before November 2013.

In addition, the Division rejected the ALJ's determination that the healthcare services R.K. received from her private insurer and Medicare should not be considered in determining whether R.K.'s daughter's care was the reason that R.K. remained at home for the two-year caregiving period. The Division held that the ALJ's interpretation was inconsistent with the plain language of the regulations defining the caregiver exemption, which the Division construed to require that the care be provided by the daughter.

## II.

R.K. now appeals from the Division's January 16, 2018 final agency determination imposing the transfer penalty. She makes three arguments: (1) the transfer of R.K.'s interest in her home is exempt from any penalty under the caregiver exemption; (2) the Division engaged in unlawful rule making when it

considered the care provided by the adult daycare center and the hospice provider; and (3) the Division acted arbitrarily, capriciously, and unreasonably by rejecting the facts found by the ALJ.

Our role in reviewing an agency decision is limited. R.S. v. Div. of Med. Assistance and Health Servs., 434 N.J. Super. 250, 260-61 (App. Div. 2014) (citing Karins v. City of Atl. City, 152 N.J. 532, 540 (1998)). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-W. Jersey Hosp. Voorhees for Certificate of Need, 194 N.J. 413, 422 (2008) (citing In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004)). "[A]n appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid. (citing In re Herrmann, 192 N.J. 19, 28 (2007)).

A presumption of validity attaches to the agency's decision. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997); In re Tax Credit Application of Pennrose Properties, Inc., 346 N.J. Super. 479, 486 (App. Div. 2002). The party challenging the validity of the agency's decision has the burden of showing that it was arbitrary, capricious, or unreasonable. J.B. v. N.J. State Parole Bd., 444

6

N.J. Super. 115, 149 (App. Div. 2016) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)). "Deference to an agency decision is particularly appropriate where interpretation of the Agency's own regulation is in issue." I.L. v. N.J. Dep't. of Human Servs., Div. of Med. Assistance and Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006) (citing H.K. v. Div. of Med. Assistance and Health Servs., 379 N.J. Super. 321, 327 (App. Div. 2005)). Nevertheless, "an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" R.S. v. Div. of Med. Assistance and Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't. of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).

When an agency head rejects or modifies an ALJ's "findings of facts, conclusions of law[,] or interpretations of agency policy in the decision . . ." the agency head "shall state clearly the reasons for doing so." N.J.S.A. 52:14B-10(c). Moreover, an agency is not required to accept an ALJ's findings when those findings "are arbitrary, capricious[,] or unreasonable or are not supported by sufficient, competent, and credible evidence in the record." Ibid. Nevertheless, when rejecting or modifying an ALJ's findings of fact, "the agency head must explain why the ALJ's decision was not supported by sufficient

credible evidence or was otherwise arbitrary." Cavalieri v. Bd. of Trs. of Pub. Employees Ret. Sys., 368 N.J. Super. 527, 534 (App. Div. 2004) (first citing N.J.S.A. 52:14B-10(c); then citing S.D. v. Div. of Med. Assistance & Health Servs., 349 N.J. Super. 480, 485 (App. Div. 2002)).

Medicaid is a federally-created, state-implemented program that provides "'medical assistance to the poor at the expense of the public.'" Estate of DeMartino v. Div. of Med. Assistance and Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004) (quoting Mistrick v. Div. of Med. Assistance and Health Servs., 154 N.J. 158, 165 (1998)); see also 42 U.S.C. § 1396-1. Once a state elects to participate and has been accepted into the Medicaid program, it must comply with the Medicaid statutes and federal regulations. See Harris v. McRae, 448 U.S. 297, 301 (1980); United Hosps. Med. Ctr. v. State, 349 N.J. Super. 1, 4 (App. Div. 2002); see also 42 U.S.C. §§ 1396a, 1396b (2019).

New Jersey participates in the federal Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to -19.5. Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted by N.J.S.A. 30:4D-7 to the Commissioner of the Department of Human Services (DHS). The Division is a unit within DHS that administers the Medicaid program. N.J.S.A. 30:4D-5, -7;

N.J.A.C. 10:49-1.1.  Consequently, the Division is responsible for protecting the interests of the New Jersey Medicaid program and its beneficiaries.  N.J.A.C. 10:49-11.1(b).

The Medicaid regulations deem an applicant ineligible for nursing home benefits if the individual "has disposed of assets at less than fair market value at any time during or after the [sixty]-month period immediately before . . . the date the individual applies for Medicaid as an institutionalized individual[,]" (the look-back period).  N.J.A.C. 10:71-4.10(a); see also N.J.A.C. 10:71-4.10(b)(9)(ii).  If it is determined that the applicant transferred an asset for less than fair market value during the look-back period, the applicant will be subject to a period of Medicaid ineligibility.  N.J.S.A. 30:4D-3(i)(15)(b); N.J.A.C. 10:71-4.10(c)(4).

There are limited exemptions to the transfer penalty rules.  Once such exemption is the caregiver exemption. N.J.A.C. 10:71-4.10(d).  Under that exemption, an individual will not be subject to a penalty when the individual transfers an "equity interest in a home which serves (or served immediately prior to entry into institutional care) as the individual's principal place of residence" and when "title to the home" is transferred to a daughter or son under certain circumstances.  Ibid. Those circumstances include that the son or daughter must

have resided in the home for "at least two years immediately before" the individual becomes institutionalized and the son or daughter must have "provided care to such individual which permitted the individual to reside at home rather than in an institution or facility." N.J.A.C. 10:71-4.10(d)(4). The care provided by the son or daughter must exceed "normal personal support activities" and the individual's physical or mental condition must be such that he or she "require[d] special attention and care." N.J.A.C. 10:71-4.10(d)(4)(i).

R.K. was admitted to the nursing home in April 2015. Consequently, to qualify for the caregiver exemption, R.K. must demonstrate that from April 2013 to April 2015, her daughter provided a level of care that allowed R.K. to reside at home rather than an institution or facility.

The Division determined that there were no medical records demonstrating that R.K. required a special level of care from March 2013 up to November 2013. Specifically, the Division focused on the lack of any evidence concerning R.K.'s medical condition during that period of time. Our review of the records demonstrates that there was no evidence concerning R.K.'s medical condition during that period of time. Consequently, the Division's determination is supported by the record and we discern no basis for rejecting that determination.

In her second argument, R.K. contends that the Division engaged in unlawful rule making when it determined that the care provided by the adult daycare center and the hospice provider disqualified R.K. from the caregiver exemption. More specifically, the Division determined that the care that allowed R.K. to remain in her home had to be provided by her daughter rather than from other services. We need not reach this issue. The Division's determination concerning the regulations was a second and alternative ground for rejecting the ALJ's determination. We have already accepted the first ground, which was that there were no records establishing R.K.'s medical condition between March 2013 and up to early November 2013.

Finally, R.K. contends that the Division acted arbitrarily, capriciously, and unreasonably in rejecting the ALJ's findings. As already noted, the Division rejected the ALJ's determination because there were no medical records establishing R.K.'s medical condition between March 2013 and up to November 2013. The Division has the authority to reject an ALJ's findings when they are not supported by "sufficient, competent, and credible evidence in the record." N.J.S.A. 52:14B-10(c).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2881-17T1