**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4675-18T1

G.S.,

     Appellant,

v.

DIVISION OF MEDICAL
ASSISTANCE AND HEALTH
SERVICES, and HUNTERDON
COUNTY DIVISION OF
SOCIAL SERVICES,

     Respondents.

_____

Submitted September 14, 2020 – Decided November 16, 2020

Before Judges Messano and Smith.

On appeal from the New Jersey Division of Medical Assistance and Health Services, Department of Human Services.

Legal Services of Northwest Jersey, attorneys for appellant (Shefali Saxena, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent Division of Medical Assistance and Health Services (Melissa H. Raksa, Assistant Attorney

General, of counsel; Jacqueline R. D'Alessandro,
Deputy Attorney General, on the brief).

PER CURIAM

On August 30, 2018, respondent, the Hunterdon County Welfare Agency (the agency), issued appellant, G.S., a notice of overpayment of ACA[1] Medicaid benefits. The agency sought $25,692.35. G.S. requested a hearing, which occurred February 19, 2019. On March 11, 2019, the administrative law judge (ALJ) issued an initial decision waiving the overpayment. In her decision, the ALJ made witness credibility findings as well as detailed findings of fact.

I.

G.S. is a twenty-four-year-old woman diagnosed with bipolar disorder, post-traumatic stress disorder, and depression. G.S. took medication for her

---

[1] Affordable Care Act (ACA) Medicaid differs from traditional Medicaid and uses different qualifying criteria than traditional Medicaid. Persons not eligible to enroll in a state's traditional Medicaid plan may qualify for the ACA Medicaid plan if they fall within a certain income range, are not eligible for minimum essential health coverage or cannot afford employer-sponsored health coverage, and have not attained the age of sixty-five at the beginning of the plan year. 42 U.S.C. § 18051(e)(1).

mental health issues, attended therapy, and lived in a group home for people diagnosed with mental illness. In 2015, G.S. applied for and was granted ACA Medicaid. G.S. did not include in her application that she suffered from mental health disabilities. In March 2016, G.S. obtained a part-time job at the Hunterdon Medical Center. She was promoted to full-time status later in 2016.

In July 2016, the agency sent G.S. its eligibility redetermination[2] form by mail. G.S. testified that she did not recall receiving the form. The purpose of the form was to ascertain any change in the recipient's "income base" under which the recipient first qualified for benefits, and to confirm that the recipient remained eligible for ACA Medicaid benefits. In 2017, the agency admitted that it failed to send G.S. the annual redetermination form, nor did it take any other steps to determine G.S.'s eligibility on its own. While working at the medical center in 2017, G.S. took a leave of absence from work due to mental and physical health issues. In April 2018, the agency performed an "administrative

---

[2] Eligibility of ACA Medicaid beneficiaries must be renewed "once every [twelve] months[.]" A renewing agency must consider a beneficiary's income, amongst other factors, in the eligibility renewal process. See 42 U.S.C. § 18051(e)(1)(B). The renewing agency making this eligibility determination "must do so without requiring information from the beneficiary if able to do so." 42 C.F.R. § 435.916(a) (1)-(2).

A-4675-18T1

renewal" of G.S.'s ACA Medicaid eligibility and discovered G.S.'s medical center job. As a result, the agency determined that G.S. no longer qualified for ACA Medicaid. Due to unreported employment income, G.S. did not qualify for ACA Medicaid benefits for calendar year 2017 and part of 2018.[3]

The agency terminated G.S. from the program and sought the recovery of $25,692.35 in benefits it paid to her during the time she had unreported income. When the agency terminated G.S.'s ACA Medicaid eligibility in April 2018, it did not undertake a determination to see if G.S. was eligible for another Medicaid program.[4] After terminating G.S. from ACA Medicaid, the agency

---

[3] See 42 U.S.C.S. § 18051(e)(1)(B).

[4] 42 C.F.R. 453.916 (f) (1) - (2) addresses the obligation of a county board of social services to search for other Medicaid programs for an ACA Medicaid beneficiary prior to determining that beneficiary ineligible. The section reads as follows:

> (1) Prior to making a determination of ineligibility, the agency must consider all bases of eligibility, consistent with § 435.911 of this part.
>
> (2) For individuals determined ineligible for Medicaid, the agency must determine potential eligibility for other insurance affordability programs and comply with the procedures set forth in § 435.1200(e) of this part.
> [Ibid.]

eventually determined G.S. eligible for another Medicaid program, called Medicaid Workability[5], in June 2018.

After the hearing, the ALJ's initial decision recommended waiving collection of the overpayment, finding that G.S.'s mental health disability, her lack of intent to commit fraud, the agency's failure to perform a timely redetermination of eligibility, and her eligibility for Medicaid Workability, taken together, supported an exercise of the Commissioner's discretion under N.J.S.A. 30:4D-7(l).[6] The Director rejected the ALJ's initial decision. The Director gave two reasons: (1) she found it "implausible" that G.S. would not know to report her income; and (2) she found that since G.S. was not determined disabled until July 2018, there could be no finding by the ALJ that G.S. would have received Workability benefits before that. The Director did not conclude

---

[5] "The purpose of the New Jersey Workability program is to provide an opportunity for disabled individuals who are employed to purchase Medicaid coverage when their earnings would otherwise disqualify them for Medicaid." N.J.A.C. 10:72-9.1. This program applies "to employed, permanently-disabled individuals residing in New Jersey who are between the ages of 16 and 64 whose countable earned incomes are below 250%, and countable unearned incomes below 100% of the Federal poverty level for an individual or a couple." Ibid.

[6] N.J.S.A. 30:4D-7(l) reads in pertinent part, "the commissioner is further authorized and empowered, at such times as he [or she] may determine feasible, . . . [t]o compromise, waive, or settle and execute a release of any claim arising under this act . . . . "

that the ALJ's findings were arbitrary, capricious, or unreasonable or that the ALJ's findings were unsupported by sufficient, competent or credible evidence in the record.

G.S. raises the following issues on appeal:

I.   DMAHS' DECISION TO DENY A WAIVER OF THE MEDICAID OVERPAYMENT WAS ARBITRARY, CAPRICIOUS, AND UNREASONABLE BECAUSE IT FAILED TO PROVIDE A CLEAR REASON FOR REJECTING THE ALJ'S INITIAL DECISION, AND WAS NOT SUPPORTED BY SUBSTANTIAL, CREDIBLE EVIDENCE IN THE RECORD.

   A. DMAHS Failed to Consider HCDSS' Affirmative Obligations in the Medicaid Renewal Process Pursuant to the Federal ACA Medicaid Regulations, 42 § C.F.R. 435.916(a).

   B. By Failing to Comply with 42 CFR § 435.916, HCDSS Retroactively Terminated Medicaid Benefits Without Evaluating G.S.' Eligibility for Another Medicaid Program in Violation of 42 C.F.R. § 435.916(f)(1).

      i.   HCDSS has a duty to evaluate a beneficiary's eligibility for all other Medicaid programs prior to termination of Medicaid benefits.

      ii.  DMAHS acted unreasonably in failing to acknowledge the substantial, credible evidence

supporting G.S.' retroactive eligibility for Medicaid Workability in 2017.

C. DMAHS Improperly Rejected the ALJ's Credibility Determinations of Lay Witnesses in Violation of the New Jersey Administrative Procedure Act, N.J.S.A. 52:14B-10(C).

II.

Our role in reviewing an agency decision is limited. R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 260-61 (App. Div. 2014) (citing Karins v. City of Atl. City, 152 N.J. 532, 540 (1998)). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." In re Virtua-W. Jersey Hosp. Voorhees for Certificate of Need, 194 N.J. 413, 422 (2008) (citing In re Freshwater Wetlands Prot. Act Rules, 180 N.J. 478, 488-89 (2004)). "[A]n appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." Ibid. (citing In re Herrmann, 192 N.J. 19, 28 (2007)).

A presumption of validity attaches to the agency's decision. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997); In re Tax Credit in re Pennrose Props., Inc., 346 N.J. Super. 479, 486 (App. Div. 2002). The party challenging the validity of the

agency's decision has the burden of showing that it was arbitrary, capricious, or unreasonable. J.B. v. N.J. State Parole Bd., 444 N.J. Super. 115, 149, (App. Div. 2016) (quoting In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006)).

Nevertheless, "an appellate court is 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973)).

The New Jersey Administrative Procedure Act, N.J.S.A. 52:14B-1 to 52:14B-31, establishes an agency head's standard of review when considering an ALJ's initial decision.

N.J.S.A. 52:14B-10(c) reads in pertinent part:

> In reviewing the decision of an administrative law judge, the agency head may reject or modify findings of fact, conclusions of law or interpretations of agency policy in the decision, but shall state clearly the reasons for doing so. The agency head may not reject or modify any findings of fact as to issues of credibility of lay witness testimony unless it is first determined from a review of the record that the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record. In rejecting or modifying any findings of fact, the agency head shall state with particularity the reasons for rejecting the findings and shall make new

or modified findings supported by sufficient, competent, and credible evidence in the record.

[Ibid.]

When an agency head rejects or modifies an ALJ's "findings of facts, conclusions of law[,] or interpretations of agency policy in the decision . . ." the agency head "shall state clearly the reasons for doing so." N.J.S.A. 52:14B-10(c). Nevertheless, when rejecting or modifying an ALJ's findings of fact, "the agency head must explain why the ALJ's decision was not supported by sufficient credible evidence or was otherwise arbitrary." Cavalieri v. Bd. of Trs. of Pub. Emps. Ret. Sys., 368 N.J. Super. 527, 534 (App. Div. 2004) (first citing N.J.S.A. 52:14B-10(c); then citing S.D. v. Div. of Med. Assistance & Health Servs., 349 N.J. Super. 480, 485 (App. Div. 2002)).

Medicaid is a federally created, state-implemented program that provides "medical assistance to the poor at the expense of the public." Estate of DeMartino v. Div. of Med. Assistance & Health Servs., 373 N.J. Super. 210, 217 (App. Div. 2004) (quoting Mistrick v. Div. of Med. Assistance & Health Servs., 154 N.J. 158, 165 (1998)); see also 42 U.S.C. § 1396-1. Once a state elects to participate and has been accepted into the Medicaid program, it must comply with the Medicaid statutes and federal regulations. Harris v. McRae, 448 U.S. 297, 301 (1980); United Hosps.

<u>Med. Ctr. v. State</u>, 349 N.J. Super. 1, 4 (App. Div. 2002); <u>see also</u> 42 U.S.C. §§ 1396a, 1396b (2019).

New Jersey participates in the federal Medicaid program pursuant to the New Jersey Medical Assistance and Health Services Act, N.J.S.A. 30:4D-1 to 4D-19.5.  Eligibility for Medicaid in New Jersey is governed by regulations adopted in accordance with the authority granted by N.J.S.A. 30:4D-7 to the Commissioner of the Department of Human Services (DHS).   The New Jersey Division of Medical Assistance and Health Services is a unit within DHS that administers the Medicaid program.  N.J.S.A. 30:4D-5, -7; N.J.A.C. 10:49-1.1. Consequently, the Division is responsible for protecting the interests of the New Jersey Medicaid program and its beneficiaries.  N.J.A.C. 10:49-11.1(b).

As opposed to standard Medicaid, eligibility for ACA Medicaid is governed by federal statute, 42 U.S.C. § 180510(e)(1). That same statute establishes guidelines designed to ensure that states: meet eligibility verification requirements for program participation; meet the requirements for use of Federal funds received by the program; and also meet quality and performance standards established under this section.  <u>Ibid.</u>  ACA Medicaid beneficiaries and the state agencies that administer them are guided by federal regulations 42 C.F.R 453.900 through 453.965, authorized by section 1102 of the Social Security Act,

42 U.S.C. § 1302. These regulations establish guidelines for beneficiaries and the agencies that serve them on a variety of ACA Medicaid implementation issues, including but not limited to, applications for benefits, eligibility determinations, and eligibility redeterminations among other issues.

III.

The Director issued a final decision rejecting the ALJ's recommendation. That decision did not include a "review of the record" and a conclusion that the ALJ's findings are "arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record." N.J.S.A. 52:14B-10(c).

The Director failed to consider the facts related to G.S.'s mental health diagnosis and any impact that diagnosis may have had on G.S.'s ability to comprehend and comply with ACA Medicaid eligibility renewal requirements. The Director failed to consider the agency's missed 2017 eligibility determination for G.S., a violation of its affirmative duty under 42 C.F.R. § 435.948 to conduct annual ACA Medicaid eligibility determinations. The Director did not consider the agency's failure to comply with 42 C.F.R. § 435.916 (f)(1), which requires an agency to determine a recipient's potential eligibility for other insurance programs before "making a determination of

11

ineligibility." The Director found "that there is nothing in the record to suggest [G.S.] was eligible for the Workability Program [prior to 2018]." This finding by the Director contradicts the record that was before the ALJ. At the hearing, G.S. introduced testimony and medical records documenting G.S.'s mental health diagnoses in 2017 which were at least identical to, if not more severe than, the diagnoses that resulted in her Medicaid Workability eligibility determination in June 2018. After considering G.S.'s significant 2017 medical history, along with the agency's failure to issue a redetermination form to G.S. that year, the ALJ inferred that G.S. would have been eligible for Medicaid Workability in 2017 had the agency carried out its duty to perform an annual redetermination under § 435.916(a) (1)-(2). This finding, along with the others listed above, was weighed by the ALJ in balancing the considerations for and against waiver. In rejecting this finding, the Director failed to "state with particularity the reasons for rejecting the [ALJ's] findings[,]"nor did she "make new or modified findings supported by sufficient, competent, and credible evidence in the record." 52:14B-10(c). Finally, the Director failed to consider the ALJ's witness credibility findings with respect to G.S. or the agency's representative. By failing to consider credibility findings of the ALJ, as well not considering the other facts cited by the ALJ in her decision, the Director

effectively rejected them without giving reasons for doing so. She made no findings to support her decision as required by the Act. Ibid.

We find that the Director, in rejecting the ALJ's decision, did not state clearly the reasons for doing so. She did not review the record and conclude that the ALJ's credibility and fact finding was arbitrary, capricious, or unreasonable. With one exception, the Medicaid Workability eligibility issue, she did not find that the ALJ's findings were unsupported by sufficient, competent, or credible evidence in the record. Lastly, the Director failed to make new or modified findings supported by competent evidence in the record in her final decision. These steps are mandated by the Administrative Procedure Act. The Director's failure to apply the appropriate standard of review in reaching her final decision was arbitrary and capricious. S.D., 349 N.J. Super. at 485 (citing Lefelt, Miragliotta & Prunty, Administrative Law & Practice, New Jersey Practice Series, § 6.16 at Supp. 23 (2001 ed. Supp.)).

We remand to the Director of the Division of Medical Assistance and Health Services for review of the ALJ's initial decision in a manner consistent with the standards outlined in this opinion.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-4675-18T1