38 N.J. Super. 169 (1955)
118 A.2d 412
MICHAEL BIALKO, PETITIONER-RESPONDENT,
v.
H. BAKER MILK CO., INC., RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 31, 1955.
Decided November 9, 1955.
*170 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Paul B. Thompson argued the cause for the respondent-appellant (Messrs. Emory, Langan & Lamb, attorneys).
Mr. Mortimer Wald argued the cause for the petitioner-respondent (Mr. Joseph Teich, attorney).
The opinion of the court was delivered by FREUND, J.A.D.
The petitioner Michael Bialko, 57 years of age, was employed by the appellant, a wholesale milk dealer. His duties consisted of driving a milk truck, loading and delivering cases of milk, picking up empty cases from customers, cleaning the loading platform and acting as a handy-man. He seeks compensation for a permanent partial paralysis, the result of a cerebral hemorrhage which occurred on Monday, March 9, 1953 and which he claims arose out of and in the course of his employment.
Normally the petitioner's work-day began at 7:00 A.M. However, on Mondays, he reported at 5:00 A.M. because in addition to his regular deliveries, he made deliveries to commercial establishments not serviced over the weekend.
On the day in question the petitioner returned from making the commercial deliveries, unloaded the "empties" and began to reload the truck in order to make his regular school deliveries. This operation consisted of loading the cases onto a hand truck in the icebox, bringing them out onto the loading platform, picking them up and placing them in the truck. He testified that as he reloaded the truck "he had a sudden feeling of a chill"; he stopped work and went to *171 the men's room, and when he came out, he still had "that funny feeling and that chill * * *." He then went to the office, said that he was sick and asked that his family doctor be called. At this instant the left side of his body became stiff and numb "all the way down." His family physician, Dr. Stephen Lesko, arrived about 15 minutes later, examined the petitioner, made a tentative diagnosis, later confirmed, of cerebral hemorrhage, and ordered that he be taken by ambulance to the hospital. He remained there for a month and is now at home, totally disabled.
The deputy director denied compensation. The County Court reversed and awarded compensation, finding that the petitioner was disabled permanently to the extent of 100% of total disability. The employer appeals.
While due regard should be given to the findings of fact made by the deputy director, where they differ from those made by the County Court, determinative weight is to be given by the Appellate Division to the County Court's findings. Donofrio v. Haag Brothers, Inc., 10 N.J. Super. 258 (App. Div. 1950).
The sharply drawn issue is raised by two conflicting medical opinions as to causal relation; one by Dr. Lesko, concurred in by Dr. Policastro, that the cerebral hemorrhage was causally related to the petitioner's work, and the other by Dr. Zigarelli, on appellant's behalf, that there was no such causal relation. In compensation cases the courts are faced with a wealth of conflicting medical opinion, most if it offered in good faith and always with the assurance that each is the medically accepted one. This maze of conflicting medical proof must be appraised by judges, not medical experts, and in the final analysis the determination of which is the soundest is made by them on the particular facts of the case.
To aid such determinations, our courts have developed a guidepost  where the medical testimony is in conflict, greater weight should be accorded to the testimony of the treating physician. Fusco v. Cambridge Piece Dyeing Corp., 135 N.J.L. 160 (E. & A. 1947); Trusky v. Ford Motor Co., *172 19 N.J. Super. 100 (App. Div. 1952); Conquy v. New Jersey Power & Light Co., 23 N.J. Super. 325 (App. Div. 1952).
Here, Dr. Lesko had been petitioner's family physician for many years. He arrived at the petitioner's side within a short time after the cerebral hemorrhage. He made the initial on-the-spot diagnosis, later proved to be correct; he treated the petitioner from that time on. Certainly in this context reason demands that greater weight be given to his conclusions than to those of Dr. Zigarelli who examined petitioner only once, and then approximately six weeks after the hemorrhage.
The deputy director's decision was based upon a finding that "no abnormal or unusual strain, effort or exertion" was expended by the petitioner on March 9, 1953 in contrast to his effort and exertion on other days of his work week. He misconceived the applicable rule. Our courts have rejected any extension of the "unusual strain or exertion" doctrine beyond the heart cases. In Fox v. Plainfield, 10 N.J. Super. 464 (App. Div. 1950) it was argued that the doctrine of "`unusual strain or exertion'" applied to cerebral hemorrhage cases. But the court held:
"The argument is not well founded. This doctrine has apparently not been extended beyond the heart cases. * * * It has certainly not been applied in cerebral hemorrhage cases; findings against liability in such cases have rested on a failure of proofs to establish the probability that the happenings contributed to the fatal cerebral hemorrhage. * * *"
Again in Neylon v. Ford Motor Co., 10 N.J. 325 (1954), Mr. Justice Jacobs, in an evenly divided court, stated that "the unusual strain or exertion doctrine" is limited to heart cases. Cf. the concurring opinion of Mr. Justice Brennan in Mergel v. N.J. Conveyor Corp., 14 N.J. 609, 614 (1954). See also Tanzman v. Shelton Dress Shop, Inc., 124 N.J.L. 215 (Sup. Ct. 1940); Mills v. Monte Christi Corp., 10 N.J. Super. 162 (App. Div. 1950), certification denied 6 N.J. 315 (1951); 1 Larson's Workmen's Compensation Law, § 38.72, p. 557.
*173 The appellant relies on Januszewski v. Public Service Coordinated Transport, 9 N.J. 107 (1952), which is not in conflict with the stated rule. There, the denial of compensation was founded upon a factual determination that the so-called "highway incident" alleged to have brought on the cerebral hemorrhage probably did not occur.
The County Court in its determination found that the petitioner "sustained this accident  a cerebral hemorrhage  which was caused by the exertion required to load the cases of milk on the truck while in the course and scope of his employment." We are satisfied that these findings were not mistaken. There is sufficient evidence in the record to sustain his conclusions. It is uncontroverted that the petitioner had suffered from mild hypertension only; otherwise, his general physical condition was good. Also, it is uncontroverted that while he was loading the truck, he felt the "chill" which Dr. Lesko, the treating physician, testified was the first indication of the hemorrhage. He testified further that the picking up of the milk cases, which caused an increase in the petitioner's blood pressure to a point where a blood vessel ruptured, causing the cerebral hemorrhage, was the direct causative agent. Further, that if the petitioner had not been working he would not have suffered the stroke. Such testimony, corroborated by the independent medical opinion of Dr. Policastro, clearly establishes the required causal relation between the work and the injury, thereby sustaining the petitioner's burden of proof. Auten v. Johnson, 115 N.J.L. 71 (Sup. Ct. 1935).
The appellant also argues that the proofs fail to support the allowance of total disability. The County Court's determination that the petitioner "was disabled permanently to the extent of 100% of total" finds abundant support in the medical testimony.
Judgment affirmed.