**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1357-18T3

JASON PRENDEVILLE,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
POLICE AND FIREMEN'S
RETIREMENT SYSTEM,

     Respondent-Respondent.

_____

Argued January 22, 2020 – Decided February 11, 2020

Before Judges Gilson and Rose.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of the Treasury, PFRS No. 3-85947.

Arthur J. Murray argued the cause for appellant (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, of counsel; Arthur J. Murray, on the brief).

Laura Drahushak, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Laura Drahushak, on the brief).

PER CURIAM

Jason Prendeville appeals a final decision of the Board of Trustees, Police and Firemen's Retirement System (PFRS). The Board adopted the initial decision of the Administrative Law Judge (ALJ), denying Prendeville's application for accidental disability retirement benefits. The ALJ found, and the Board agreed, Prendeville was not permanently and totally disabled from performing his duties as a corrections officer, and his disability claim was not the direct result of a traumatic event. Because we conclude the Board's decision "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D), we affirm.

In July 2015, Prendeville applied for accidental disability retirement benefits, claiming he suffered from post-traumatic stress disorder (PTSD), post-concussion syndrome, and other cognitive and neurological deficits following an incident that occurred nearly two years prior. At the time of the incident, Prendeville was working as a senior corrections officer for the Juvenile Justice Commission. The facts pertaining to that event are essentially undisputed.

Prendeville was injured when he attempted to quell a melee involving approximately thirty youthful-offender inmates. He was struck in the head by "something" that caused blood to "gush[] from [his] nose at a high rate."

Prendeville was treated in the emergency room for head, nose, and neck injuries; he did not lose consciousness; he neither sustained broken bones nor required stitches. Shortly thereafter, Prendeville claimed he experienced anxiety attacks and cognitive and neurological deficits. He did not return to work.

The Board denied Prendeville's application. Following denial of Prendeville's reconsideration application, the matter was transmitted to the Office of Administrative Law as a contested case.

During the ensuing two-day testimonial hearing before the ALJ, Prendeville testified on his own behalf and presented the testimony of George A. Peters, Ph.D., an expert in neuropsychology, and Vasko K. Gulevski, M.D. an expert in neurology. At the time of the hearing, both experts were still treating Prendeville in connection with his worker's compensation claim. Drs. Peters and Gulevski agreed that Prendeville is permanently and totally disabled. The Board presented the competing testimony of its experts: Mark J. Chelder, Ph.D., a neuropsychology expert, and Steven M. Lomazow, M.D., a neurology expert. The Board's experts opined Prendeville is not disabled and can return to work. The ALJ also considered documentary evidence, including the experts' reports and Prendeville's medical records.

3

The ALJ discussed at length the testimony adduced at the hearing, which is part of the record. The evidence required the ALJ to assess Prendeville's credibility and to determine which party's medical experts were more credible.

Although he noted Prendeville "appeared to be a credible witness," the ALJ ultimately determined Prendeville "embellish[ed] the facts of the incident and the credible expert testimony of Dr. Chelder established that [Prendeville] was magnifying his symptoms." Indeed, the ALJ observed Prendeville did not stutter or exhibit any memory issues while testifying during the hearing. Those observations were contrary to Prendeville's testimony that his "[s]tuttering . . . manifest[ed] under stress" and his "memory was horrible"; he "would be in the middle of a conversation and forget what [he] was saying . . . ."

Turning to his assessment of the experts, the ALJ recognized all four "medical experts proved to be credible, competent witnesses." Citing the general rule we espoused long ago in a workers' compensation case, the ALJ aptly observed a treating physician's testimony should be accorded more weight than an evaluating physician when the medical evidence is in conflict. See Bialko v. Baker Milk, Co., 38 N.J. Super. 169, 171-72 (App. Div. 1955). The ALJ recognized, however, that "this guidepost [was] not unwaivable" and noted that other factors to consider in exposing "weaknesses" in expert testimony

included whether the expert's "conclusions [were] based largely on the subjective complaints of the patient or on a cursory examination," or were "support[ed] in the records from other physicians . . . ." See Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 86 (App. Div. 1961). With those legal principles in view, the ALJ ultimately determined the Board's experts "presented a more logical and persuasive opinion as to the issue of permanent and total disability and [Prendeville]'s ability to perform the functions and duties of his job."

Assessing Prendeville's experts, the ALJ afforded both witnesses the consideration to which they were entitled as his treating physicians, finding "they presented credible and sincere testimony" and "their opinions were influenced by [Prendeville]'s subjective complaints that were strengthened by the objective findings." But, the ALJ concluded "their findings were conclusory in nature and ill supported by any concrete evidence."

For example, the ALJ cited various concerns with Dr. Peters' testimony, particularly during cross-examination:

> Dr. Peters noted that although Prendeville complained of many issues with intellectual function, his actual scores on the test were high-normal. Also, [Prendeville's] complaints about speech were not supported by [Dr. Peters'] findings when he noted that Prendeville was "fluent and engaged in conversation."

5

. . . [Dr. Peters also] indicate[d] that he was relying on Prendeville's history as reported to him. In fact, Dr. Peters noted that he was "not a detective" and "I don't ask for corroboration" of any information provided.

Conversely, the ALJ cited examples of Dr. Chelder's testimony, describing the results of the personality assessment test that a neuropsychologist had administered to Prendeville. Those results "revealed a tendency toward mild symptom exaggeration. As such, test findings would need to be interpreted with caution as they may have overestimated levels of psychological dysfunction." Dr. Chelder "did not believe that there were ongoing issues related to post-concussive syndrome as the evidence for concussion was limited." Accordingly, the ALJ accepted Dr. Chelder's "objective findings" underscoring the expert's conclusion that: "Prendeville was . . . not permanently and totally disabled from performing his job as a corrections officer with respect to his psychological functioning. There was insufficient evidence of a disabling psychological disorder due to the findings of symptom exaggeration on personality testing."

Considering the testimony of the opposing neurological experts, the ALJ noted both doctors found no objective evidence that Prendeville suffered a concussion. Regarding Prendeville's expert, the ALJ observed, "On cross-examination, Dr. Gulevski conceded that [Prendeville]'s motor exam was normal along with the sensory examination. In fact, no records confirm the fact that

Prendeville suffered a concussion[;] only the self-reporting by Prendeville himself." Similarly, on behalf of the Board, Dr. Lomazow cited "[t]wo MRIs of the brain demonstrat[ing] very mild nonspecific white matter changes" to support his conclusion that "[t]here is absolutely no objective evidence with respect to a concussion." Instead, Dr. Lomazow opined Prendeville exaggerated his symptoms.

After Prendeville filed exceptions and the agency replied, the Board adopted the ALJ's decision "with modification."[1] This appeal followed.

On appeal, Prendeville raises the following points for our consideration:

POINT I

THE . . . BOARD'S FAILURE TO GIVE GREATER WEIGHT TO THE TESTIMONY OF [DRS.] PETERS AND GULEVSKI GIVEN THE FACT THEY WERE TREATING EXPERTS AS OPPOSED TO [DRS.] CHELDER AND LOMAZOW, WHO WERE EXAMINING EXPERTS, LED TO A CLEARLY ERRONEOUS DETERMINATION.

POINT II

THE . . . BOARD'S FAILURE TO ACKNOWLEDGE THAT ITS EXPERT'S CONCURRENCE WITH

---

[1] The Board's modification "reject[ed] statements" on one page of the ALJ's nineteen-page decision regarding an unrelated incident from another decision by the ALJ. Prendeville has not raised any concerns about those unrelated references. Having considered the entire record before the ALJ, our review is not hampered by those references.

BOTH [DRS.] PETERS AND GULEVSKI THAT PRENDEVILLE WAS NOT FIT TO BE DESIGNATED AS [MAXIMUM MEDICAL IMPROVEMENT (MMI)] AS OF THE DATE HE TESTIFIED, WHICH WAS MORE THAN [FOUR-AND-A-HALF] YEARS POST INCIDENT, LED TO A CLEARLY ERRONEOUS DETERMINATION.

## POINT III

THE . . . BOARD'S FAILURE TO RECOGNIZE THAT PRENDEVILLE HAD ESTABLISHED ALL CRITERIA UNDER THE DSM-V FOR A DIAGNOSIS OF PTSD LED TO A CLEARLY ERRONEOUS RESULT.

A. [to E].[2] [DR.] CHELDER, THE BOARD'S HIRED EXAMINING EXPERT, CONCURRED WITH [DR.] PETERS THAT PRENDEVILLE HAD ESTABLISHED CRITERIA A[, C, D, E, AND F] UNDER DSM-V FOR A DIAGNOSIS OF PTSD.

F. ALTHOUGH [DRS.] CHELDER AND PETERS DISAGREED OVER WHETHER OR NOT PRENDEVILLE HAD ESTABLISHED CRITER[ION] B UNDER THE DSM-V FOR A DIAGNOSIS OF PTSD, THE MEDICAL RECORDS MOVED INTO EVIDENCE COUPLED WITH [DR.] PETERS' TESTIMONY SUBSTAN[T]IATE CRITERI[ON] B OF PTSD.

## POINT IV

THE . . . BOARD SUBMITTED NO EVIDENCE TO REFUTE THE TESTIMONY THAT THE JUVENILE JUSTICE COMMISSION OFFERS NO RESTRICTED

---

[2] We have condensed the related subpoint headings for the sake of brevity.

8

DUTY OR LIGHT DUTY TO CORRECTIONS OFFICERS.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). Reviewing courts presume the validity of the "administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014). For those reasons, "an appellate court ordinarily should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006).

"[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) (quoting Charatan v. Bd. of Review, 200 N.J. Super. 74, 79 (App. Div. 1985)). "Where . . . the determination is founded upon

sufficient credible evidence seen from the totality of the record and on that record findings have been made and conclusions reached involving agency expertise, the agency decision should be sustained." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 189 (1980), overruled on other grounds by Maynard v. Bd. of Trs., Teachers' Pension & Annuity Fund, 113 N.J. 169 (1988). That said, appellate courts review de novo an agency's interpretation of a statute or case law. Russo, 206 N.J. at 27.

Pursuant to N.J.S.A. 43:16A-7(a)(1), a PFRS member may apply for accidental disability retirement benefits. In Richardson v. Board of Trustees, Police & Firemen's Retirement Systems, 192 N.J. 189, 212-13 (2007), the Court held that a claimant for accidental disability retirement benefits must prove:

> 1. that he is permanently and totally disabled;
>
> 2. as a direct result of a traumatic event that is
>
> > a. identifiable as to time and place,
> >
> > b. undesigned and unexpected, and
> >
> > c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);
>
> 3. that the traumatic event occurred during and as a result of the member's regular or assigned duties;

4. that the disability was not the result of the member's willful negligence; and

5. that the member is mentally or physically incapacitated from performing his usual or any other duty.

Relevant here, the Court observed a "permanent and total disability" precludes an employee, due to mental or physical impairment, "from performing his own or any other available job." Id. at 195. An individual seeking accidental disability retirement benefits must prove a disabling permanent injury, and must produce "such expert evidence as is required to sustain that burden." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 51 (2008).

Applying these principles, we are satisfied the medical testimony and records support the ALJ's decision and the Board's adoption of that decision. We reject Prendeville's argument raised in point I of his brief that the Board erred by failing "to give greater weight" to the testimony of his treating physicians than the Board's non-treating experts. As stated above, the ALJ carefully examined the legal precedent, but found the Board's experts were more persuasive. Giving "due regard" to the ALJ's opportunity to hear the witnesses and judge their credibility, as we must, In re Taylor, 158 N.J. 644, 656 (1999), we defer to his credibility findings, which "are often influenced by matters such as observations of the character and demeanor of witnesses and common human

11

experience that are not transmitted by the record." State v. Locurto, 157 N.J. 463, 474 (1999).

We further note, the ALJ as the factfinder here, was not obligated to accept any expert's opinion, even if the expert was "impressive," State v. Carpenter, 268 N.J. Super. 378, 383 (App. Div. 1993), and may accept some of the expert's testimony and reject the rest, Todd v. Sheridan, 268 N.J. Super. 387, 401 (App. Div. 1993), even if that testimony is unrebutted by any other evidence, Johnson v. Am. Homestead Mortg. Corp., 306 N.J. Super. 429, 438 (App. Div. 1997), particularly "when, as here, the factfinder is confronted with directly divergent opinions expressed by the experts," State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004). Importantly, "the choice of accepting or rejecting the testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." Renan Realty Corp. v. State, Dep't of Cmty. Affairs, Bureau of Hous. Inspection, 182 N.J. Super 415, 421 (App. Div. 1981).

According the appropriate deference to the ALJ's credibility determinations, we conclude there is substantial evidence in the record to support the ALJ's factual findings and legal conclusions, which the Board adopted. "We rely upon the expertise of the [Board] to separate legitimate from

illegitimate claims," Patterson, 194 N.J. at 51, and we are satisfied that the Board's "determination [here] is founded upon sufficient credible evidence seen from the totality of the record . . . ." Gerba, 83 N.J. at 189; R. 2:11-3(e)(1)(D).

We have considered Prendeville's remaining contentions in light of the record and applicable legal principles, and conclude they are without sufficient merit to warrant discussion in our written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments regarding point II of his brief.

Prendeville contends the Board erred in finding he was not totally and permanently disabled because both of his experts and the Board's neuropsychologist opined Prendeville would not achieve MMI and he continues to receive workers' compensation benefits. Prendeville's argument is unavailing. Although a work-related injury may satisfy workers' compensation requirements, it does not necessarily constitute an "accidental disability" for pension retirement purposes where, as here, the credible medical evidence in the record indicates the injury was not the direct result of a traumatic event. Gerba, 83 N.J. at 184.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1357-18T3