**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3925-19

GINA RILEY,

     Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION AND
ANNUITY FUND,

     Respondent-Respondent.

_____

Argued October 28, 2021 – Decided November 10, 2021

Before Judges Alvarez and Mawla.

On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.

Jason E. Sokolowski argued the cause for appellant (Zazzali, Fagella, Nowak, Kleinbaum & Friedman, attorneys; Jason E. Sokolowski, of counsel and on the briefs).

Matthew Melton, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Matthew Melton, on the brief).

PER CURIAM

Petitioner Gina Riley appeals from the May 12, 2020 final determination of respondent Board of Trustees (Board) of the Teachers' Pension and Annuity Fund (TPAF) denying her application for ordinary disability retirement benefits. We affirm.

Riley was a teacher in the Jersey City and Manalapan/Englishtown school districts. Beginning in 2010 or 2012, her primary care physician, Dr. Robert Boyd, diagnosed her with anxiety and depression and prescribed anti-anxiety and anti-depressant medications. Dr. Boyd referred Riley to a psychiatrist, Dr. Emmanuel Hriso. Dr. Hriso initially diagnosed Riley with adjustment disorder with anxiety, depression, and panic disorder, and prescribed medications.

In September 2013, Riley transferred to the Plainfield Academy for the Arts and Advanced Studies. Although the school hired her as a business applications teacher, she was assigned to teach subjects she had no knowledge of. Riley claimed she was not given teaching materials or a curriculum and was assigned a room without computers, in an unsuitable location where she "was constantly being distracted by noise and could not focus on her work. She became anxious and started experiencing panic attacks, and then depression."

A-3925-19

Riley's condition worsened, causing her to take off from work "two or three days a week." She experienced "frequent panic attacks" as well as "anxiety, . . . depressive episodes, anger, frustration, [and] irritability" which caused Dr. Hriso to believe "she couldn't really . . . carry out a . . . job appropriately."

In April 2014, Riley was transferred to Plainfield High School. Dr. Hriso reported she continued to struggle because her new position "was ill-defined, . . . she was subject to hostility, again leading to more emotional upheaval, with anxiety, irritability, and depression." He stated Riley "was reluctant to go on more consistent short-term disability at the time because she was hoping to get better with treatment and 'hang in' until improvement in her condition, . . . [and] hope[d to be] transferred into a more appropriate position given her skill sets."

In May 2014, the Plainfield Board of Education did not renew Riley's contract. When Dr. Hriso saw Riley that month, he observed she was upset over her employment situation so he "tried to have her refocus on more positive approaches, such as pursuing [other teaching] openings . . . ."

That summer, Riley lost her mother, a close aunt, and two uncles. She also experienced several physical injuries. Dr. Hriso reevaluated her in February

A-3925-19

2015 and found "[s]he presented as very depressed" and recommended she continue taking her prescribed medications.

From November of 2015 to April 2016, Riley sought treatment through Catholic Charities. In November 2015, a clinician at Catholic Charities diagnosed her with "Major Depressive Disorder due to symptoms of a persistent negative mood, loss of pleasure in activities previously enjoyable, agitation, [and] difficulty concentrating, and focusing." The clinician increased Riley's medications.

On December 31, 2015, Riley applied for TPAF ordinary disability retirement benefits. In August 2016, the Board denied her application "based on the determination that [she was] not totally and permanently disabled at the time [she] left employment with [Plainfield] in June 2014, in accordance with N.J.A.C. 17:1-6.4." Riley appealed, and the matter was transferred to the Office of Administrative Law for a factfinding hearing by an administrative law judge (ALJ).

The ALJ heard testimony from Dr. Hriso and Riley. The Board presented testimony from its psychologist and medical expert, Dr. Daniel LoPreto.

Dr. Hriso submitted a narrative report, reiterating that Riley's "disability started long before she applied for ordinary disability, and there is strong

A-3925-19

evidence clinically that she was psychiatrically impaired and disabled during her work for [Plainfield]." He opined Riley's current diagnoses were major depressive disorder, generalized anxiety disorder, panic disorder, and post-traumatic stress disorder. He concluded "Riley remains disabled from her psychiatric and medical conditions. She has [a] significant impairment[] and is in no shape psychiatrically and physically to return to work."

Dr. Hriso testified consistent with his report. He opined Riley was disabled before she left teaching because by May 2014, her symptoms had become so severe they "caused her to not be able to do her job adequately." He arrived at this conclusion based on subjective and objective observations, including Riley's subjective complaints and his objective observations of her demeanor and general appearance. He conceded he did not review her psychiatric records prior to treating her, nor did he review her records from Catholic Charities or Dr. Boyd. He did, however, speak with Dr. Boyd.

Dr. Hriso testified he did not perform any psychological testing because for "clinical evaluation[s], . . . there are no tests to really demonstrate someone has . . . major depression." He recommended Riley seek other job opportunities in May 2014 "to give her an alternative" option, but "in retrospect . . . [he] thought she was disabled permanently or totally by that time " because "she

5

really couldn't function . . . ." He was unsure she could have functioned in another school.

Riley testified that throughout her employment in Plainfield, she experienced "some fear and extreme panic attacks" that were "disabling" and became progressively worse. Although she claimed she could not continue to work as of 2014, she was "being optimistic" keeping some teaching applications open. She conceded the deaths in her family and her physical injuries worsened her psychological state.

Dr. LoPreto evaluated Riley in May 2017. He also reviewed Dr. Hriso's treatment notes and records from Catholic Charities, among other medical records. According to Dr. LoPreto's report, Riley told him that as soon as she learned Plainfield was not renewing her teaching contract, she "began seeking other teaching positions but couldn't find anything" for six months.

As part of his evaluation, Dr. LoPreto administered a Personality Assessment Inventory (PAI). He opined Riley's PAI scores showed "some exaggeration" but otherwise produced a "valid profile" that was " consistent with a significant depressive experience." Based on his review of her medical records and his evaluation, he concluded she "[a]t the time of current examination, [is]

totally and permanently disabled, and no longer able to perform the material job duties of a [t]eacher, . . . due to her psychological condition."

Dr. LoPreto differed with Dr. Hriso regarding the onset of Riley's disability noting "[t]here is no documentation to indicate [Riley] was disabled at the time she left employment." He cited Riley's job search from May 2014 through December 2014 as further evidence she did not have a psychological disability. He opined "Riley's psychological condition deteriorated, subsequent to her leaving work, due to numerous psychosocial stressors, including the fact that she was unable to secure alternate employment in her field after being laid off by [Plainfield]."

Dr. LoPreto testified in accordance with his report. He opined that as of Riley's application for benefits, she was "totally and permanently disabled by virtue of major depressive [dis]order and generalized anxiety disorder and a somatic symptom disorder." He explained the difference between Dr. Boyd and Dr. Hriso's initial depression diagnosis, and the later major depression diagnosis by Catholic Charities is that "[m]ajor depression is much more significant, much more limiting . . . [and] much more paralyzing. The symptoms result in more functional impairment."

A-3925-19

He testified he based his approximation of the onset of Riley's disability in part on Dr. Hriso's encouraging her to seek other teaching positions. He opined "if both she and her doctor are encouraging her to teach, there's no objective evidence of . . . a disability there . . . ." Further, he explained "[a] diagnosis does not equal a disability. Disability is based on functional impairments[.]" Riley did not meet the criteria until she experienced multiple losses in her family.

The ALJ concluded Riley proved "she was permanently and totally disabled at the time she was employed at Plainfield, and likely for a long time prior, and remains totally and permanently disabled, and therefore . . . she is entitled to an ordinary disability retirement pension." Although the ALJ found both doctors credible, she determined Dr. Hriso's testimony as the treating physician was more reliable. On the other hand, the ALJ concluded Dr. LoPreto's assessment was based on lack of documentation proving a disability before June 2014, and therefore could not "place much weight on [his] diagnosis regarding the onset of the total and permanent disability."

The Board rejected the ALJ's credibility finding, stating "Dr. Hriso did not, in fact, review any of [Riley's] medical records, he did not perform objective tests, and he based his opinion primarily on [Riley's] self-report of symptoms."

8

It determined Dr. LoPreto's testimony, was more credible because he reviewed "all of [Riley's] psychiatric medical records (from before and after her June 2014 termination), . . . [conducted] objective testing and [reviewed an] independent medical examination . . . ." The Board also noted that Dr. Hriso's suggestion to seek alternative teaching positions in May 2014 contradicted his conclusion Riley was permanently disabled at that time. The Board denied the application for disability benefits.

Riley raises the following points on appeal:

POINT I

THE TPAF BOARD'S DECISION TO REJECT THE ALJ'S FACTUAL FINDINGS AND LEGAL CONCLUSIONS FINDING . . . RILEY TOTALLY AND PERMANENTLY DISABLED AT THE TIME OF HER SEPARATION FROM EMPLOYMENT BASED ON ITS BELIEF THAT ITS EXPERT TESTIMONY SHOULD BE CREDITED OVER . . . RILEY'S EXPERT TESTIMONY IS CONTRARY TO THE DOCUMENTARY AND TESTIMONIAL RECORD WHICH SUPPORTED THE ALJ'S FACTUAL AND LEGAL FINDINGS GRANTING . . . RILEY ORDINARY DISABILITY RETIREMENT BENEFITS.

A. STANDARD OF REVIEW

B. THE ALJ CORRECTLY DETERMINED THAT . . . RILEY MET THE STANDARD THAT SHE WAS TOTALLY AND PERMANENTLY DISABLED FROM THE

9

PERFORMANCE OF HER JOB DUTIES AS OF HER SEPARATION OF EMPLOYMENT IN JUNE[] 2014, THEREBY ENTITLING HER TO RECEIVE ORDINARY DISABILITY RETIREMENT BENEFITS.

C. THE TPAF BOARD ERRED BY IMPROPERLY CREDITING THE TESTIMONY OF THE TPAF BOARD'S EXPERT MEDICAL WITNESS OVER . . . RILEY'S EXPERT MEDICAL WITNESS, WHEN, AS TRIER OF FACT, THE ALJ HEARD THE TESTIMONY OF BOTH EXPERT WITNESSES AND REVIEWED ALL OF THE MEDICAL EVIDENCE, CORRECTLY DETERMINING THAT . . . RILEY'S EXPERT MEDICAL WITNESS WAS MORE PERSUASIVE IN HIS OPINION ESTABLISHING . . . RILEY'S ENTITLEMENT TO ORDINARY DISABILITY RETIREMENT BENEFITS.

D. THE TPAF BOARD'S REASONS FOR FINDING ITS MEDICAL EXPERT MORE RELIABLE THAN . . . RILEY'S MEDICAL EXPERT ARE UNTENABLE IN LIGHT OF THE RECORD IN THIS CASE.

. . . .

[1]. THE TPAF BOARD COMPLETELY IGNORED THE FACT THAT . . . RILEY'S MEDICAL EXPERT WAS ALSO HER TREATING PSYCHIATRIST WHO EXAMINED HER BOTH BEFORE AND AFTER HER SEPARATION [FROM] SERVICE AS OPPOSED TO THE TPAF BOARD'S MEDICAL

10

EXPERT WHO ONLY EXAMINED . . . RILEY ONCE, AND FOR THAT REASON, GREATER WEIGHT ACCORDED TO . . . RILEY'S TREATING PSYCHIATRIST.

Our "review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). We defer "to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing City of Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). We "should not disturb an administrative agency's determinations or findings unless there is a clear showing that (1) the agency did not follow the law; (2) the decision was arbitrary, capricious, or unreasonable; or (3) the decision was not supported by substantial evidence." In re Virtua-West Jersey Hosp. Voorhees for a Certificate of Need, 194 N.J. 413, 422 (2008) (citing Herrmann, 192 N.J. at 28). "[T]he test is not whether an appellate court would come to the same conclusion if the original determination was its to make, but rather whether the factfinder could reasonably so conclude upon the proofs." Brady v. Bd. of Rev., 152 N.J. 197 (1997) (quoting Charatan v. Bd. of Rev., 200 N.J. Super. 74, 79 (App. Div. 1985)).

N.J.S.A. 18A:66-39(b) states a TPAF member is eligible for ordinary disability where "[t]he physician . . . designated by the board . . . [conducts] a medical examination of [the member] . . . and shall have certified to the board that the member is physically or mentally incapacitated for the performance of duty and should be retired."  We have interpreted the statute to mean that the applicant must have left their position due to the disability.  In re Adoption of N.J.A.C. 17:1-6.4, 17:1-7.5 & 17:1-7.10, 454 N.J. Super. 386, 399 (App. Div. 2018).

An applicant must prove "she has a disabling condition and must produce expert evidence to sustain this burden."  Bueno v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, Div. of Pensions and Benefits, 404 N.J. Super. 119, 126 (App. Div. 2008) (citing Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 50-51 (2008)).  "A teacher with a disabling mental condition may qualify for ordinary disability retirement benefits."  Ibid.

Riley relies on N.J.S.A. 52:14B-10(c) and argues the Board could not reject the ALJ's credibility findings without first concluding those findings were arbitrary, capricious, unreasonable or unsupported by the evidence.  However, we have stated N.J.S.A. 52:14B-10(c) does not apply to expert witnesses.  ZRB, LLC v. N.J. Dep't of Env't Prot., Land Use Regul., 403 N.J. Super. 531, 561

12

(App. Div. 2008). The credibility determinations here involved the expert witnesses' conflicting testimony about the onset of Riley's disability, not lay witness testimony. Therefore, N.J.S.A. 52:14B-10(c) did not apply.

We reject Riley's argument that the Board erred by failing to accord her treating psychiatrist's testimony greater weight. The Board "has ultimate authority . . . to adopt, reject[,] or modify" an ALJ's findings. N.J. Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils. & Hackensack Water Co., 189 N.J. Super. 491, 507 (App. Div. 1983) (citing In re License of Suspension of Silberman, 169 N.J. Super. 243, 255-56 (App. Div. 1979)). We defer to the Board's findings unless they are "supported by substantial credible evidence." Ibid. If the Board rejects the ALJ's findings, it must "state clearly the reasons for doing so." N.J.S.A. 52:14B-10(c).

Generally, "where the medical testimony is in conflict, greater weight should be accorded to the testimony of the treating physician." Bialko v. H. Baker Milk Co., 38 N.J. Super. 169, 171 (App. Div. 1955); see also Conquy v. N.J. Power & Light Co., 23 N.J. Super. 325, 330 (App. Div. 1952). However, the weight accorded to an expert's testimony depends on several factors such as whether the expert is testifying regarding their specialty, if their conclusions are largely based on the patient's subjective complaints, and if their opinions are

supported by objective evidence corroborated by other physicians.  Angel v. Rand Express Lines, Inc., 66 N.J. Super. 77, 86 (App. Div. 1961).

Here, the Board articulated specific reasons for crediting Dr. LoPreto's testimony over Dr. Hriso.  It explained Dr. Hriso did not review Riley's records from Catholic Charities or Dr. Boyd's notes.  The Board noted the information Dr. Hriso received regarding her Catholic Charities treatment was based on self-reporting and Dr. Hriso was treating Riley sporadically during that time period.  Indeed, he evaluated Riley in April, and May 2014, but did not see her again until February 2015.  At that time, he noted Riley was "very depressed" but did not alter her diagnosis or conclude she was permanently disabled.  Notwithstanding his advice to Riley to seek other employment, the record is clear he did not document her permanent disability until May 2016.  Moreover, Riley experienced a series of deaths and physical injuries, compounding her mental health issues during the May 2014 to February 2015 gap.  As a result, the Board's expert credibly opined Riley became disabled after leaving her employment.

For these reasons, the Board's denial of Riley's ordinary disability retirement benefits was not arbitrary, capricious, or unreasonable.

A-3925-19

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

15

A-3925-19