**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3926-19

CARMEN COLON-RIVERA,

    Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
TEACHERS' PENSION and
ANNUITY FUND,

    Respondent-Respondent.

_____

> Argued December 1, 2021 – Decided December 14, 2021
>
> Before Judges Whipple, Geiger and Susswein.
>
> On appeal from the Board of Trustees of the Teachers' Pension and Annuity Fund, Department of the Treasury.
>
> Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord on the brief).
>
> Connor V. Martin, Deputy Attorney General, argued the cause for respondent (Andrew J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa,

Assistant Attorney General, of counsel; Connor V. Martin, on the brief).

PER CURIAM

Appellant Carmen Colon-Rivera appeals from a final decision of respondent Board of Trustees (the Board) of the Teachers' Pension and Annuity Fund (TPAF) denying her application for accidental disability retirement benefits pursuant to N.J.S.A. 18A:66-39(c). We affirm.

We glean the following facts from the record. Appellant was employed by the Trenton Board of Education as a world language teacher at Trenton Central High School for approximately fourteen years. Her job responsibilities included making lesson plans, executing a program of study, "[g]uid[ing] the learning process toward the achievement of curriculum goals," choosing textbooks and other materials, and "[p]erform[ing] such tasks and assum[ing] such responsibilities as directed by the principal." She taught five ninety-minute class periods.

Although not stated in the job description, appellant believed that standing and walking around kept her students engaged and was a key part of the job. She also believed she was expected to walk around and stand while teaching and that not doing so would result in her losing her job.

 A-3926-19

On September 27, 2010, while at work preparing a desk near her own for a handicapped student, appellant attempted to move a box of textbooks that she did not realize was open. Five or six hardcover textbooks fell on her right foot, injuring her. Appellant reported the accident to the school nurse, provided information for generating a first accident report, and later that day began a course of treatment at Workers Compensation Corporate Health Center where she was diagnosed with ruptured tendons. The Center prescribed physical therapy and she returned to work the next day.

The only accommodation appellant requested from the principal was to be permitted to wear sneakers while teaching. Appellant went to physical therapy but continued experiencing pain and swelling in her right foot after standing and walking at work. Appellant compensated for her right foot injury by favoring her left foot and developed Achilles' tendinitis and pain in her left foot.

Appellant was initially treated by Dr. Fredric Kleinbart, an orthopedic surgeon, who rendered non-surgical care from February 24, 2011, to December 8, 2011, but recommended surgery for the ruptured tendon.

Appellant sought a second opinion from Dr. Jon Ark, an orthopedic surgeon. He also recommended tendon surgery. Dr. Ark treated appellant from January 23, 2012, to January 14, 2015, and performed three surgeries.

A-3926-19

On October 17, 2012, Dr. Ark performed a third metatarsal osteotomy tendon transfer of the flexor digitorum profundus tendon to the dorsum of the toe, correction of the [proximal interphalangeal (PIP)] third pseudarthrosis, and exterior tendon lengthening to treat a right third metatarsal-phalangeal joint dislocation and deformity of the interphalangeal joint of the third toe. Appellant did not return to work after the 2012 surgery.

On August 12, 2013, Dr. Ark performed unrelated surgery for right great toe arthritis and a failed right great toe bunion correction. He performed a right foot Silver bunionectomy, right great toe metatarsal-phalangeal joint fusion, and hardware removal.

On August 13, 2014, Dr. Ark performed a right third toe amputation due to a right third toe malunion. Appellant also underwent a course of postoperative therapy.

Appellant's prior medical history included treatment of significant injuries to the right third toe. On June 29, 2007, Dr. John F. Stanoch, a podiatrist, performed an osteotomy of the second metatarsal; flexor tenolysis[1] of the

---

[1]    Tenolysis is a surgical procedure to release adhered tendons. https://www.merriam-webster.com/medical/tenolysis (last visited December 3, 2021).

A-3926-19

second, third, and fourth metatarsal-phalangeal joints on the right foot; and arthroplasty of the second, third, and fourth toes.

On January 5, 2015, more than four years after the 2010 accident, appellant applied for accidental disability retirement benefits. The Board retained Dr. Jeffrey F. Lakin, a board-certified orthopedic surgeon, as its expert. He performed an independent medical examination of appellant on July 1, 2015. On physical examination, Dr. Lakin reported:

> On examination of the right foot and leg, there is a well-healed incision in the dorsal aspect consistent with the prior surgeries to the second, third and fourth toes longitudinally of the dorsum. The third toe is no long present. There is no tenderness of the dorsum of the foot. There is no motion of the metatarsal phalangeal joint of the great toe. There is no calf or thigh tenderness. Plantar flexion and dorsiflexion are 5/5. Ankle inversion and eversion are 5/5. There is 10 degrees of dorsiflexion and 40 degrees of plantar flexion with inversion to 25 degrees and eversion to 20 degrees which is symmetrical to the contralateral lower extremity. There is no tenderness over the medial or lateral malleoli. There is a negative anterior drawer sign of the ankle. Gait is unremarkable. There is no calf or thigh tenderness. There was no tenderness over the Achilles tendon and over the plantar fascia of the right foot.

His review of the imaging studies revealed:

> An MRI of the right foot performed on [October 16, 2008], prior to the work-related accident of [September 27, 2010], revealed status post right foot

 A-3926-19

surgery. There is subluxation of the distal and mid third phalanges of the third toe. There is no evidence of fluid collection or osteomyelitis. The flexor tendon of the third toe could be followed to the distal portion of the third metatarsal and is not seen distal to that.

An x-ray report of the right foot of [September 27, 2010] identified postoperative changes and questionable mild subluxation of the PIP joint of the third digit.

Dr. Lakin concluded that appellant:

[H]ad significant preexisting conditions to the right foot with prior surgery to the right third toe prior to the date of injury of [September 27, 2010].

Based upon this examination and review of the job description as a teacher, [appellant] is not totally and permanently disabled from the performance of the normal duties of her job. It should be noted that she had significant preexisting conditions to the right foot prior to the work related accident of [September 27, 2010]. Based upon this examination, she sustained a sprain and a contusion to the right foot and has excellent strength and excellent motion of her right foot.

On August 6, 2015, the Board denied her application. The Board found that the event that caused appellant's reported disability was: (a) "identifiable as to time and place"; (b) "occurred during and as a result of [appellant's] regular or assigned duties"; and (c) "not the result of [appellant's] willful negligence." The basis for the denial of accidental disability was that: (a) appellant was "not

6

totally and permanently disabled from the performance of [her] regular and assigned job duties"; (b) appellant was "not physically or mentally incapacitated from the performance of [her] usual or other duties that [her] employer is willing to offer"; and (c) "the event that caused [her] disability claim [was] not undesigned and unexpected." However, given her years of service, appellant qualified for a deferred retirement, allowing her to collect monthly ordinary retirement benefits upon reaching normal retirement age.

Appellant appealed the denial, and the matter was transferred to the Office of Administrative Law (OAL) for determination as a contested case and assigned to an Administrative Law Judge (ALJ). The ALJ conducted a two-day hearing. Appellant, Dr. Ark, and Dr. Lakin testified at the hearing. On March 6, 2020, the ALJ issued a sixteen-page Initial Decision, which summarized the testimony of each witness, set forth her factual and credibility findings, analyzed the applicable legal principles, and applied them to the facts.

The ALJ found that overall, appellant:

> [P]resented credible testimony. She was candid and direct in her description of events and of her treatment . . . . She was also credible in her recitation of the pain and difficulties she has encountered with her feet and the manner in which it affected her ability to move around her classroom and stand for long periods. Her descriptions of pain and swelling she regularly encountered in her right foot and the ensuing effect on

7

her left foot was corroborated by her course of treatment, resulting in four surgeries, including a toe amputation, prescription pain medication, orthotics and the use of a cane.

Regarding the expert testimony, the ALJ found that Dr. Ark, appellant's expert, was more credible on the issue of "whether [appellant] suffers from foot conditions which restrict her ability to stand and walk for periods of time." The ALJ found that he was familiar with appellant's medical treatment, as he performed three surgeries on her; his testimony was corroborated and consistent with appellant's pain in her right foot; and overall, "Ark's discussion of those underlying issues was more comprehensive and gave credence to his course of treatment and surgeries for [appellant], as well as his conclusion that she was restricted to sedentary work." The judge found that appellant suffered from foot-related conditions which restrict her mobility and confine her to sedentary work.

On the other hand, the ALJ found the Board's expert, Dr. Lakin, more credible on the issue of "whether petitioner's foot issues are the result of a condition pre-existing the September 27, 2010, book incident, or were a result of that accident . . . ." The judge found Dr. Lakin more specific on this issue, corroborated by medical records that showed appellant had significant foot surgery and pain before the incident. The incident "produced a contusion of the foot, but no fractures or other discernible damage to the foot." Although the

incident "aggravated the underlying synovitis," there was already an "underlying foot deformity . . . present." The judge found that appellant's foot condition and difficulties standing and walking were not the direct result of the September 27, 2010 incident.

The ALJ then analyzed the legal standards for accidental disability benefits. First, the judge explained that the incident was not "undesigned and unexpected" because appellant was doing something that "was part of her regular and ordinary job duties, and there was no evidence of an intervening event or party that caused the books to fall on her foot." Moving books to provide them to students "was a normal and regular part of her job as a teacher . . . ." "There was no external event or happening which disrupted that function."

Next, she found that appellant's disability was not a direct result of the incident, but a result of a pre-existing condition.

> [T]he record shows that petitioner had both a deformity in her right foot with a broken tendon, as well as symptomology related to that condition up to and just prior to the incident in which books fell on that foot. Viewing the record as a whole and the expert medical testimony, petitioner has failed her burden of showing that her condition was a direct result of the September 2010, accident. The evidence showed that her subsequent surgeries and foot difficulties were the result of the surgery and foot issues which existed prior to her accident.

A-3926-19

As to proving the element of total and permanent disability, the ALJ explained that appellant's "testimony about her job duties must align with the official job description." In that regard, "an employer's willingness to accommodate a member's physical or mental condition may influence a determination whether the member is incapacitated for the performance of duty." The ALJ noted that Dr. Ark "placed restrictions on [appellant's] walking and driving" and opined that she "could not stand longer than two hours per day and not walk more than 100 feet per episode." But on cross-examination, Dr. Ark "admitted that if accommodations regarding walking and standing were provided, she could continue to teach." The ALJ determined:

> [Appellant] has not met her burden of proving by the preponderance of the evidence that she is totally and permanently disabled from the performance of her duties. Although she was credible in her description of how she stood and walked during her teaching duties, such movement was not required in her job description. Nor did she present additional testimony or evidence to show that such movement was required of her. While her foot condition restricts her to sedentary work and to that extent, she is disabled from the manner in which she has taught over the years, that does not disable her from the essential functions of teaching as set forth in her job description. Nor did [appellant] seek any accommodations for her claimed disability which could have allowed her to teach in a manner that took her physical restrictions into account.

10

The ALJ concluded that appellant had not proven: (1) "the incident of September 27, 2010, was undesigned and unexpected"; (2) "her disability was the direct result of that incident"; and (3) "she is totally and permanently disabled from her position as a high school language teacher." Accordingly, the ALJ upheld the Board's denial of her application for accidental disability retirement benefits. Appellant appealed the Initial Decision.

On May 12, 2020, the Board issued a final administrative decision adopting the ALJ's initial decision, which affirmed the Board's determination denying appellant's application for accidental disability retirement benefits. This appeal followed.

Petitioner raises the following points for our consideration:

POINT I

PETITIONER QUALIFIES FOR ACCIDENTAL DISABILITY RETIREMENT BENEFITS AS OUTLINED IN RICHARDSON[2] AS THE DISABLING EVENT WAS UNDESIGNED AND UNEXPECTED AND OCCURRED DURING AND AS A RESULT OF THE PERFORMANCE OF HER REGULAR JOB DUTIES.

POINT II

DR. ARK'S TESTIMONY AS AN AUTHORIZED TREATING PHYSICIAN THAT PETITIONER WAS

---

[2] Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189 (2007).

PERMANENTLY AND TOTALLY DISABLED FROM THE PERFORMANCE OF HER REGULAR AND ASSIGNED JOB DUTIES AS A DIRECT RESULT OF THE ACCIDENT IS ENTITLED TO GREATER WEIGHT THAN THE TESTIMONY OF DR. LAKIN, WHO PERFORMED A ONE-TIME INDEPENDENT MEDICAL EVALUATON.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). The agency's decision should be upheld "unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Ibid. (quoting Herrmann, 192 N.J. at 27-28). "The burden of demonstrating that the agency's action was arbitrary, capricious or unreasonable rests upon the [party] challenging the administrative action." In re Arenas, 385 N.J. Super. 440, 443-44 (App. Div. 2006) (citations omitted).

We accord deference to the Board's interpretation of the statutes it is charged with enforcing. Thompson v. Bd. of Trs., Teachers' Pension & Annuity Fund, 449 N.J. Super. 478, 483 (App. Div. 2017) (quoting Richardson, 192 N.J. at 196), aff'd o.b., 233 N.J. 232 (2018). "'Such deference has been specifically extended to state agencies that administer pension statutes,' because 'a state agency brings experience and specialized knowledge to its task of administering

12

and regulating a legislative enactment within its field of expertise.'" Id. at 483 (quoting Piatt v. Bd. of Trs., Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015)).

The factual "findings of an ALJ 'are considered binding on appeal, when supported by adequate, substantial and credible evidence.'" Oceanside Charter Sch. v. Dep't of Educ., 418 N.J. Super. 1, 9 (App. Div. 2011) (quoting In re Taylor, 158 N.J. 644, 656 (1999)). "The choice of accepting or rejecting testimony of witnesses rests with the administrative agency, and where such choice is reasonably made, it is conclusive on appeal." Ibid. (quoting In re Howard Sav. Bank, 143 N.J. Super. 1, 9 (App. Div. 1976)). Deference is "especially appropriate when the evidence is largely testimonial and involves questions of credibility." In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997) (citing Bonnco Petrol, Inc. v. Epstein, 115 N.J. 599, 607 (1989)).

"A reviewing court 'may not substitute its own judgment for the agency's, even though the court might have reached a different result.'" In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)). "This is particularly true when the issue under review is directed to the agency's special 'expertise and superior knowledge of a particular field.'" Id. at 195 (quoting Herrmann, 192 N.J. at 28). When controlling facts are disputed, we

13

accord deference to the Board's factual findings. Oceanside Charter Sch., 418 N.J. Super. at 9.

Like all public retirement systems, the TPAF provides for both ordinary and accidental retirement benefits. N.J.S.A. 18A:66-39. The principal difference between ordinary and accidental disability retirement "is that ordinary disability retirement need not have a work connection." Patterson v. Bd. of Trs., State Police Ret. Sys., 194 N.J. 29, 42 (2008). A TPAF member may be retired on an accidental disability pension if the employee is "permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties . . . ." N.J.S.A. 18A:66-39(c); accord Kasper v. Bd. of Trs., Teachers' Pension & Annuity Fund, 164 N.J. 564, 572-73 (2000). Appellant must demonstrate the accident "constitutes the essential significant or the substantial contributing cause of the ultimate disability." Gerba v. Bd. of Trs., Pub. Emps.' Ret. Sys., 83 N.J. 174, 188 (1980). Accidental disability retirement benefits are greater than ordinary disability retirement benefits. Patterson, 194 N.J. at 43.

Applying these principles, we affirm substantially for the reasons expressed in the ALJ's comprehensive and well-reasoned Initial Decision. We add the following comments.

We first note that an ALJ's factual findings of lay-witness credibility generally receive deference. See N.J.S.A. 52:14B-10(c) ("The [Board] may not reject or modify any findings of fact as to issues of credibility of lay witness testimony unless . . . the findings are arbitrary, capricious or unreasonable or are not supported by sufficient, competent, and credible evidence in the record."). In considering that evidence, we "give 'due regard to the opportunity of the one who heard the witnesses to judge of their credibility . . . .'" Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587 (1988) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). "[I]t is not for us or the agency head to disturb that credibility determination, made after due consideration of the witnesses' testimony and demeanor during the hearing." H.K. v. State, Dep't Hum. Servs., 184 N.J. 367, 384 (2005).

Generally, "where the medical testimony is in conflict, greater weight should be accorded to the testimony of the treating physician" as opposed to an evaluating physician who has examined the employee on only one occasion. Bialko v. H. Baker Milk Co., 38 N.J. Super. 169, 171 (App. Div. 1955); accord Mernick v. Div. of Motor Vehicles, 328 N.J. Super. 512, 522 (App. Div. 2000). "Nevertheless, expert testimony need not be given greater weight than other evidence nor more weight than it would otherwise deserve in light of common

sense and experience." Torres v. Schripps, Inc., 342 N.J. Super. 419, 430 (App. Div. 2001) (citing In re Yaccarino, 117 N.J. 175, 196 (1989)). Accordingly, "[t]he factfinder may accept some of the expert's testimony and reject the rest." Ibid. (citing Todd v. Sheridan, 268 N.J. Super. 387, 401 (App. Div. 1993)).

Moreover, "a factfinder is not bound to accept the testimony of an expert witness, even if it is unrebutted by any other evidence." Id. at 431 (citing Johnson v. Am. Homestead Mortg. Corp., 306 N.J. Super. 429, 438 (App. Div. 1997)). "Indeed, a judge is not obligated to accept an expert's opinion, even if the expert was 'impressive.'" State v. M.J.K., 369 N.J. Super. 532, 549 (App. Div. 2004) (quoting State v. Carpenter, 268 N.J. Super. 378, 383 (App. Div. 1993)).

"[T]he weight to which an expert opinion is entitled can rise no higher than the facts and reasoning upon which that opinion is predicated." State v. Jenewicz, 193 N.J. 440, 466 (2008) (quoting Johnson v. Salem Corp., 97 N.J. 78, 91 (1984)). "This is particularly true when, as here, the factfinder is confronted with directly divergent opinions expressed by the experts." M.J.K., 369 N.J. Super. at 549. The factfinder, rather than a reviewing court, "is better positioned to evaluate the witness' credibility, qualifications, and the weight to

be accorded her testimony." In re Guardianship of D.M.H., 161 N.J. 365, 382 (1999) (citing Bonnco, 115 N.J. at 607).

Here, the evidence largely consisted of prior medical conditions and treatment, conflicting expert testimony, and appellant's subjective interpretation of her job duties and obligations, which required the factfinder to determine the credibility of the witnesses and the weight to accord to their testimony. Although Dr. Ark was appellant's treating physician, the aspects of Dr. Lakin's testimony that the ALJ found more credible were based on his review of the appellant's medical history, imaging studies, and physical examination, and were thereby supported by the record.

Appellant used a style of teaching that involved continuous movement, standing, and walking throughout during classes. Her job description did not require that method of teaching. Without any objective basis, she assumed that she would lose her job if she did not continually move around the classroom while teaching. On that unsupported basis, she claimed she was permanently and totally disabled from performing her teaching duties. The ALJ properly rejected that claim. Appellant is not wheelchair-bound and does not use crutches or a walker. Appellant's own expert opined that she could stand up to two hours per day and walk up to 100 feet at a time. On cross-examination, her expert

admitted that appellant could continue to teach with walking and standing accommodations. The only accommodation that appellant requested from her employer was to wear sneakers while teaching; she never requested any accommodations regarding the amount of standing or walking. She did not demonstrate that she was unable to perform her job duties with reasonable accommodations.

During oral argument before this court, appellant acknowledged that if she had dropped the whole box containing the books on her foot, the accident would not have been "undesigned and unexpected." She argued that because the books unexpectedly fell out a box that she did not realize was open, the accident was "undesigned and unexpected." We view this as a distinction without a difference.

We discern no basis to overturn the Board's determination that appellant was ineligible for accidental disability retirement benefits. The ALJ's findings and conclusions, which the Board adopted, are supported by substantial credible evidence in the record and consonant with applicable legal principles. The Board's final decision was not arbitrary, capricious, or unreasonable.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18

A-3926-19